Syllabus.

Ellis W. Hayes *et al.*

*v.*

The Massachusetts Mutual Life Insurance Company.

*Filed at Springfield September 27, 1888.*

1. Appeals—*reviewing the facts—finding of facts by Appellate Court.* In so far, only, as the Appellate Court, on a reversal of the judgment of the trial court, in its final order, finds the facts necessary to a recovery different from the finding of the trial court, will such finding be conclusive upon this court.

2. Where a plaintiff counts on two causes of action, and obtains a general verdict and judgment, and the Appellate Court finds the facts as to one count differently from the trial court, without finding as to the other ground of action, a judgment of reversal by the Appellate Court will be erroneous.

3. The finding of the Appellate Court, under section 87 of the Practice act, of the facts differently from the trial court, is the finding of the ultimate facts, upon the existence or non-existence of which, as set up in the pleadings, the rights of the parties depend. That section does not require the Appellate Court to find what was the evidence of these facts, or that it shall find the merely subordinate or evidentiary facts which, when established, contribute to the establishment of the ultimate fact which must exist in order to sustain the alleged cause of action.

4. Joinder of counts—*in trover and case.* Counts in case and counts in trover may be joined in the same declaration.

5. Trover—*when the action will lie.* Trover will lie for the wrongful conversion of valuable papers, or evidence of title to real or personal property, for checks, promissory notes, bank bills, bonds, bills of exchange, drafts, certificates of stock in incorporated companies, securities of any kind, books of account, vouchers, etc., and of a policy of insurance.

6. To maintain trover, a plaintiff must show a tortious conversion by the defendant, and that at the time of the conversion the plaintiff had a right of property in the chattel converted, and the possession, or the immediate right of possession, thereof.

7. So if an insurance company wrongfully obtains the possession of a policy of insurance, and claims satisfaction thereof by a payment to the guardian of the beneficiary of a sum less than that agreed to be paid, the latter may maintain trover against the company for the wrongful conversion of the policy of insurance, and recover the sum unpaid thereon. If the company obtains such policy illegally, its act of retaining possession thereof is a tortious conversion.

8. SAME—*whether demand necessary.* Proof of a demand and refusal is necessary, in trover, when the defendant comes lawfully into possession, and the plaintiff is not prepared to prove a distinct and actual conversion. But demand and refusal are unnecessary if the taking was tortious, or if an actual conversion is shown.

9. MEASURE OF DAMAGES—*in trover.* The measure of damages, in trover for the conversion of a bond, check, note, and the like, *prima facie,* is the face value, though if it is shown that its collectible value is less, the latter will be the true measure.

10. GUARDIAN AND WARD—*power of the former to compromise in respect of his ward's rights.* A guardian, under our statute. has no power to compound or compromise in respect of his ward's rights, whereby a less sum than is due is accepted, except under the approbation or direction of the county court, and if he does, his act will not bind his ward, and the ward may disaffirm it.

11. PAYMENT—*by less than the sum actually due.* An acceptance by a creditor of a sum less than the amount due, in satisfaction, or an agreement to take a less sum in satisfaction, is, in the first case, a discharge of only so much of the debt, and in the other case, the promise is void, as being without consideration.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. C. B. SMITH, Judge, presiding.

Plaintiffs in error, by their next friend, brought their action in the Coles circuit court, against the defendant in error. Plaintiffs counted—

*First*—On a written policy of insurance dated February 16, 1874, upon the life of Job M. Hayes, for $12,000, for the benefit of plaintiffs in error, issued by the defendant company; averred the death of the assured in August, 1876, and the liability of the defendant company to plaintiffs in error upon the policy; averred that James F. Hughes was guardian of plaintiffs, and had control of the policy; that defendant, by its agent, in order to cheat and defraud plaintiffs, and obtain a fraudulent settlement and the possession of the policy, in April, 1877, falsely, covinously, etc., with intent to cheat and defraud plaintiffs, represented to plaintiffs' guardian that the assured, before the policy issued, used intoxicating liquors to

excess, and also used intoxicating liquors daily and habitually, which representations were false, and known to be false when made; averred that the assured, before the issuance of the policy, had not used intoxicating liquors to excess, and had not used intoxicating liquors daily or habitually; averred if such representations had been true, the policy thereby would have been vitiated and annulled, and that the guardian relied thereon, of which the defendant had notice, whereby the defendant obtained of the guardian an agreement to accept $6045 in settlement for and surrender of the policy, with intent to cheat and defraud plaintiffs; averred that after making said agreement, defendant paid the guardian the $6045, and procured the surrender of the policy; further averred that the agreement and surrender were procured and obtained by fraud, whereby the remaining portion due on the policy was lost to plaintiffs in error.

*Second*—Identical with the first count, except that the policy was set out *in hæc verba.*

*Third*—In trover, in the usual form, for the wrongful conversion of the policy,—setting the same out *in hæc verba,*—laying the damages at $12,000.

Issue was taken on the pleas: First, general issue; and second, five years' statute of limitations. Trial by jury; verdict and judgment for plaintiffs for $9060. On appeal to the Appellate Court for the Third District, the judgment of the circuit court was reversed, that court finding in its final order "that the policy of insurance for $12,000, issued on the 16th day of February, 1874, upon the life of Job M. Hayes, for the benefit of Ellis W. Hayes and Daniel D. Hayes, was, on the 20th of April, 1877, by James F. Hughes, guardian of said Ellis W. and Daniel D. Hayes, surrendered to the agent of said insurance company for the consideration of $6045, then paid to the said guardian by the agent of said insurance company," and "that the charge in the declaration, that the surrender of said policy was procured by fraud upon the part of

said insurance company, or its agent or agents, is not supported by the evidence, and is not true in fact." No order of remandment was made. The record is brought into this court by writ of error.

Mr. JAMES W. CRAIG, for the plaintiffs in error:

As to what constitutes a conversion of property, see *Maxwell* v. *Harrison,* 8 Ga. 61; Cooley on Torts, 448, 449, 451; *Clawes* v. *Hawley,* 12 Johns. 486; Addison on Torts, 312; *Boyce* v. *Brockway,* 31 N. Y. 493; *Hyde* v. *Noble,* 13 N. H. 494.

Possession with claim of title is a conversion. *Adams* v. *Meisel,* 11 Ga. 106; 2 Hilliard on Torts, 111; *Fortier* v. *Ballance,* 5 Gilm. 41.

The payment of $6045 can not be pleaded in satisfaction of $12,000. *Cumber* v. *Wane,* 1 Strange, 425; *Edgell* v. *Stanford,* 6 Vt. 551; *Harrison* v. *Close,* 2 Johns. 448; *Knotts* v. *Preble,* 50 Ill. 227.

The guardian could not lawfully give away his ward's right. *Whittington* v. *Ross,* 8 Bradw. 239; *Edsall* v. *Vandemark,* 39 Barb. 599; *Bank* v. *Norton,* 1 Hill. 576; *Cunningham* v. *Railroad Co.* 77 Ill. 178; 42 Cal. 291; *Bond* v. *Lockwood,* 33 Ill. 223; *Davenport* v. *Young,* 16 id. 551; *Rozier* v. *Fagan,* 46 id. 404; *Smith* v. *Sackett,* 5 Gilm. 544.

The statute requires the guardian to have the order of the county court before he can compound. *McIntyre* v. *People,* 103 Ill. 147; *Breit* v. *Yeaton,* 101 id. 259; *Young* v. *Dowling,* 15 id. 486.

The statute allows demands to be compounded, by approval of the court. If done any other way it is void. The law seems to be, that courts can not dispense with a defective execution of power created by law, or dispense with any of the formalities required thereby for its due execution, for otherwise the whole policy of legislative enactments might be overturned. *Hunt* v. *School District,* 14 Vt. 300; *Young* v. *Dowling,* 15 Ill. 487; 39 Am. Dec. 225; *County of Hardin* v. *McFarlan,* 82 Ill. 138;

*Law* v. *People*, 87 id. 385; *Stevenson* v. *School Directors*, id. 255; *Wells* v. *People*, 71 id. 534; *Tamm* v. *Lavalle*, 92 id. 270; *Moulton* v. *Hurd*, 20 id. 137.

The possession by the guardian is the ward's possession. *Magee* v. *Toland*, 8 Porter, 36; *Sallee* v. *Arnold*, 32 Mo. 532; *McDonald* v. *Whitman*, 16 Ala. 343; *Miller* v. *Blackburn*, 14 Ind. 82.

The measure of damages is principal and interest due on the policy. *Rose* v. *Lewis*, 10 Mich. 583; *Moray* v. *Wood*, 12 Wis. 469; *Clowes* v. *Hawley*, 12 Johns. 485; *Keaggy* v. *Hite*, 12 Ill. 101; Sedgwick on Damages, 611; *Ingalls* v. *Lord*, 1 Cow. 240.

The Appellate Court, instead of finding the facts on the question different from the circuit court, simply found conclusions, "that the charge of fraud is not supported by the evidence, and is not true in fact."

Mr. JAMES A. CONNOLLY, and Mr. FRANK K. DUNN, for the defendant in error:

The Appellate Court having found the defendant was not guilty of obtaining the policy by fraud, is conclusive on this court. Whether that finding is right or wrong, that is the end of it. *Harzfeld* v. *Converse*, 105 Ill. 534; *Williams* v. *Forbes*, 114 id. 167.

The Appellate Court is not required to set out the evidentiary facts in their findings.

Assuming, then, as must be done, "that the charge of fraud is not supported by the evidence, and is not true in fact," no judgment could have been rendered against the defendant on the first two counts, for the charge of fraud is the very *gist* of those counts. The third and only remaining count is an ordinary count in trover, for the conversion of the policy, which is set out *in hæc verba*. To maintain this count, the plaintiff must show a tortious conversion of property by defendant, and that at the time of the conversion the plaintiffs had a right of

property in the chattel converted, and also had the possession thereof, or a right to the immediate possession thereof. *Owens* v. *Weedman,* 82 Ill. 417.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

It is contended by plaintiffs in error that the finding of facts recited in the final order of the Appellate Court was not sufficient, and not such as is required by the 87th section of the Practice act. In the section referred to it is provided, that "if any final determination of any cause, as specified in the preceding sections, shall be made by the Appellate Court, as the result, wholly or in part, of the finding of the facts concerning the matter in controversy, different from the finding of the court from which such cause was brought by appeal or writ of error, it shall be the duty of such Appellate Court to recite in its final order, judgment or decree, the facts as found, and the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy in such cause."

In so far, then, as the Appellate Court, in its final order, has found the facts necessary to a recovery different from the finding of the trial court, such finding is conclusive upon this court, and the finding of facts contemplated by the section of the statute quoted is, as announced in *Brown* v. *City of Aurora,* 109 Ill. 165, and *Rogers* v. *Chicago, Burlington and Quincy Railroad Co.* 117 id. 115, "the finding of the ultimate fact or facts upon the existence or non-existence of which, as set up in the pleadings in the cause, the rights of the parties depend; that it does not mean that the Appellate Court shall find what was the evidence of those facts, or that it shall find those merely subordinate or evidentiary facts which, when established, contribute to the establishment of the ultimate fact which must exist in order to sustain the alleged cause of action."

Two ultimate facts were found and certified by the Appellate Court: First, "that the policy of insurance for $12,000,

issued on the 16th day of February, 1874, upon the life of Job M. Hayes, for the benefit of Ellis W. Hayes and Daniel D. Hayes, was, on the 20th of April, 1877, by James F. Hughes, guardian of said Ellis W. and Daniel D. Hayes, surrendered to the agent of said insurance company for the consideration of $6045 then paid to said guardian by the agent of said insurance company;" and second, that the charge "that the surrender of said policy was procured by fraud upon the part of said insurance company, or its agent or agents, is not supported by the evidence, and is not true in fact."

In respect to the first, it is apparent that the finding of the Appellate Court does not differ from the finding of the circuit court. The ultimate fact, here, is the surrender of the $12,000, policy by the guardian, for the consideration of $6045. Such surrender was averred in the declaration and admitted by the defendant company, and must have been found as a fact by the trial court. As to the second, however, if the circuit court rendered its finding and judgment upon the case made by and under the first and second counts of the declaration, it is equally obvious that the finding by the Appellate Court differed from the finding by the circuit court, and, under the authorities before referred to, this court is precluded from reviewing the question as to whether or not the surrender of the policy was procured by fraud, as alleged in the declaration. In the first and second counts of the declaration it was averred that the surrender of the policy was procured by fraud, setting out in what the fraud consisted; and in certifying that the charge of fraud was not true in fact, the Appellate Court did all that the statute required it to do. It certified, not the evidentiary facts, but the ultimate fact, and its certificate is sufficient, under the law.

In so far, then, as the right of plaintiffs in error to a recovery depended upon the existence of the facts averred in the first and second counts of the declaration, the adverse determination and finding of the Appellate Court is conclusive. But

the declaration upon which the parties went to trial contained three counts,—the first and second, in form, counts in *case,* and the third a count in *trover,* for the wrongful conversion of the policy of insurance. There was not a misjoinder of actions, for counts in case and trover may be joined. (1 Chitty's Pl. 199.) And trover will lie for the wrongful conversion of valuable papers, or evidences of title to real or personal property, for checks, promissory notes, bank bills, bonds, bills of exchange, drafts, certificates of stock in incorporated companies, securities of any kind, books of account, vouchers, etc., (*Garvin* v. *Wiswell,* 83 Ill. 215, *Alexander* v. *Rundle,* 75 id. 85, 6 Wait's Actions and Defenses, title "Trover," and cases there cited,) and for a policy of insurance. *Harding* v. *Carter,* opinion by Lord MANSFIELD, referred to and cited in 1 Park on Marine Insurance, 4.

The verdict was general. If it be assumed, as we do, that the *gravamen* of the cause of action set out in the two counts in case was the alleged fraudulent representations of defendant in error, and that the special finding by the Appellate Court that the evidence did not support the charge of fraud, rendered a recovery upon those counts impossible, why, it is asked, should not the verdict and judgment of the circuit court have been sustained under the third count?

Counsel for defendant in error contend, by way of answer, that to maintain trover, the plaintiff must show a tortious conversion by the defendant, and that at the time of the conversion the plaintiff had a right of property in the chattel converted, and the possession or the immediate right of possion thereof,—citing *Owens* v. *Weedman,* 82 Ill. 409,—and such we understand to be the law. But counsel further contend, that plaintiffs in error, to prove the tortious conversion, relied on the fraudulent acts charged in the two counts in case, and that the finding of the Appellate Court that such charge was "not supported by the evidence, and not true in fact," is conclusive of the whole question. But it by no means follows,

that because the defendant in error was not guilty of the fraud charged in those counts, plaintiffs in error could not recover upon the count in trover, if a case was made thereunder. Whether a recovery could be had under this count, depended upon the evidence. This policy of insurance was the property of plaintiffs in error. (*Harding* v. *Carter, supra.*) They were the sole beneficiaries named therein, and alone entitled to have and receive the sum of money therein expressed. It was in their legal possession. The guardian was their legal representative, and his possession was their possession. That the defendant in error obtained the possession of this valuable paper from the representative of plaintiffs in error, is admitted, and that ever since it has had possession and control of the same, appears by the stipulation of the parties. This stipulation, in connection with the release obtained from the guardian, abundantly shows the conversion; but that such conversion was tortious, is strenuously denied.

Generally speaking, a tort is a wrong, and, obviously, a tortious act is no more than a wrongful act. But in the language of the books, a tortious act consists of the commission or omission of an act by one, without right, whereby another receives some injury, directly or indirectly, in person, property or reputation. (Bouvier's Law Dic. title "Tort.") An illegal act, whereby another is injured in respect of a right of property, is unquestionably a tortious act. If, therefore, defendant in error obtained this policy illegally, its act of retaining possession thereof was a tortious conversion. It clearly appears that possession of this instrument was obtained under and by virtue of an agreement entered into between defendant in error and the guardian of plaintiffs in error, by the terms of which the demand of plaintiffs in error, as evidenced by this instrument, was compounded for less than the full amount thereof, and the same attempted to be released by the guardian. Plaintiffs in error were infants under guardianship, and their guardian was without power and authority thus to compromise and

release their legal demands, without the approval of the county court.

In defining the powers of guardians over the personal estate of their wards, the statute provides that "the guardian shall settle all accounts of his ward, and demand and sue for, and receive in his own name, as guardian, all personal property of and demands due the ward, or, with the approbation of the court, compound for the same, and give a discharge to the debtor upon receiving a fair and just dividend of his estate and effects." (1 Starr & Curtis, p. 1241, sec. 17.) In an early case it was held by this court, that the statute respecting guardians and wards was not designed and did not constitute a complete code, and that the purpose of the legislature was to confer upon the probate court the power to appoint guardians, and to regulate their conduct according to the common law. (*Bond* v. *Lockwood,* 33 Ill. 212.) And while, at common law, a guardian may only have been required to manage and care for the estate of his ward honestly, and with reasonable prudence and diligence, and might have compromised or submitted to arbitration claims and demands due the ward's estate, it is manifest that when the legislature, in the section referred to, undertook to define the powers and duties of guardians, and expressly provided that as to demands due the ward the guardian might, "with the approbation of the court, compound for the same, and give a discharge to the debtor," a change and modification of the common law was intended. If before this statute the guardian might, in the exercise of his own honest discretion, compound and release a demand due his ward, after the passage of this statute he was clearly required to procure the approbation of the proper court before exercising such power. For the personal discretion of the guardian there was substituted the judicial determination of an established court. And this statutory requirement is something more than a mere regulation and direction, and was intended by the legislature as an additional safeguard and protection

to the ward, by requiring the terms and conditions of any proposed compromise to be submitted to, inquired into and passed upon by that court having special jurisdiction of the estates of minors. In *McIntyre* v. *The People, use, etc.* 103 Ill. 142, in construing the 22d section of this same chapter of the statute, this court held that the statutory requirement respecting the investment of the ward's money "upon security to be approved by the court," was mandatory upon the guardian. Under the provisions of that section, as under this, in order to legalize the act of the guardian and render it binding upon the ward, the approval of the court was required, and the provision here involved must be held to be mandatory.

In respect to the compromise attempted to be effected, and the release executed by the guardian, the record fails to show that the same was submitted to and approved by the county court. Defendant in error was charged with notice of the guardian's want of power to bind his wards by any agreement of compromise involving the acceptance of a less sum than the full amount due, or by a surrender of the possession of the instrument evidencing such indebtedness, upon a consideration less than the full amount due thereon; and the act of defendant in error in inducing and bringing about such surrender, and in accepting the possession of the instrument under the circumstances shown, was, as against these wards, clearly tortious. Furthermore, the fact of conversion being admitted, as it is by the stipulation of defendant in error, under the authority of *Sturges* v. *Keith*, 57 Ill. 451, such conversion was itself a tortious act.

It is also insisted by defendant in error, that these wards can not disaffirm the act of their guardian,—that while it might be disaffirmed by the proper court, the wards themselves can not treat it as void. We know of no principle which denies to a ward the right, in apt time, to disaffirm any unauthorized act of his guardian.

It is further insisted by defendant in error, that no demand was made for the return of this policy. To this it must be answered, that proof of demand and refusal are necessary where the defendant became, in the first instance, lawfully possessed of the chattel, and the plaintiff is not prepared to prove some distinct, actual conversion. (1 Chitty's Pl. 157.) But demand and refusal are unnecessary if the taking is tortious, or if an actual conversion is shown. (Ibid. note 2.) See *Ryan* v. *Brant,* 42 Ill. 78; *Bruner* v. *Dyball,* id. 34; *Gibbs* v. *Jones,* 46 id. 319; *Bane* v. *Detrick,* 52 id. 19; *Hardy* v. *Keeler,* 56 id. 152. Here, an actual conversion having been shown, no demand was necessary.

The measure of damages in trover for the conversion of a bond, check, note, and the like, *prima facie,* is the face value, though if it is shown that its collectible value is less, the latter will be the true measure. (*Cothran* v. *Hanover Nat. Bank,* 8 Jones & Spencer, (N. Y.) 401; *Murray* v. *Pate,* 6 Dana, 335; *Garvin* v. *Wiswell,* 83 Ill. 215.) The record being silent as to the collectible value of this policy, its value, *prima facie,* was the sum expressed on its face, ($12,000,) with interest; and as payment of $6045 was shown, the damages that the jury might award plaintiffs in error was the balance of the principal sum, with interest. The damages found by the jury did not, as we understand the facts, exceed the unpaid portion of the principal, with interest, and was therefore not excessive.

Defendant in error places its defense to this action upon the settlement it effected with, and the release it procured from, the guardian; and while it has shown that it was not guilty of the acts of fraud charged in the first and second counts of the declaration, it has wholly failed to show that such settlement and discharge were made and procured in the manner prescribed by the law, and under such circumstances as to bind these plaintiffs in error.

The case, then, is this: Defendant in error was liable to plaintiffs in error on a policy of insurance for $12,000. It

effected a settlement with the legal representative of plaintiffs in error, paying him $6045, or fifty per cent of the then amount of its liability under the policy, receiving at the same time, from the guardian, a release of the balance due plaintiffs in error, and also the surrender of the instrument evidencing the indebtedness. Plaintiffs in error repudiate the unauthorized act of their guardian, as of right they may, and bring trover for the wrongful conversion of the policy of insurance, laying damages sufficient to cover the unpaid portion of the principal sum expressed in the policy, with interest. The action is well laid, issue is taken, and a trial had. The execution of the policy by defendant in error is not denied, and it is read in evidence. Plaintiffs in error admit receiving as in partial payment $6045, and claim the balance, principal and interest. Defendant in error makes proof of the settlement with the guardian, and introduces his release, and admits receiving and retaining the possession and control of the policy, but fails to prove that the settlement was approved and the release authorized by the proper court.

The settlement and release being illegal and unauthorized, and possession of the policy having been obtained illegally, can not avail as a defense to the action. Nor, under the facts of this case, would this result have been at all changed if plaintiffs in error, instead of being minors, and incapable of contracting, had been of full age, and legally competent to contract, and had themselves agreed with defendant in error to accept one-half the sum of money due on the policy, in full satisfaction; for the rule is well settled, that an acceptance by the creditor of a sum less than the amount due, in satisfaction, or an agreement to take a less sum in satisfaction, is, in the first case, a discharge of only so much of the debt, and in the other case, the promise is void, as without consideration. As said by DEWEY, J., in *Brooks* v. *White*, 2 Metc. 285 : "The general principle, that the acceptance of a less sum in money than is actually due can not be a satisfaction, and will not

operate to extinguish the whole debt, although agreed by the creditor, seems to be recognized in books of unquestionable authority. The reason of the rule is, as stated by Lord ELLEN-BOROUGH, in *Fitch* v. *Sutton,* 5 East, 232, that there must be some consideration for the relinquishment of the excess due beyond the sum paid,—something to show the possibility of benefit to the party thus relinquishing a legal right, otherwise the agreement is *nudum pactum."* And in *Bailey* v. *Day,* 26 Maine, 88, where a judgment creditor accepted a small part of the debt in discharge of the whole, and afterwards sought to compel payment of the residue, the court said: "The authorities are numerous, and, it is believed, uniform, that the payment, in money, of a debt due and payable in money, by the debtor, at the place where he was bound to make it, of a sum less than the full amount, and at the same time an agreement of the creditor to discharge the residue, will not operate as a defense to a suit for the balance. The reason is obvious: the agreement of discharge is without consideration.   ❊   ❊   ❊ By the payment of a part, the defendants laid no foundation for an obligation in the plaintiff, but merely made discharge, *pro tanto,* for their own, which they had long omitted." See, also, *Pinnel's case,* 5 Coke, 117; *Heathcote* v. *Crookshanks,* 2 T. R. 24; *Cumber* v. *Ware,* 1 Strange, 426; Bishop on Contracts, chap. 3, sec. 50; Parsons on Contracts, 618. This rule has no application, however, where property other than money is taken in satisfaction, or where there is an honest compromise of unliquidated or disputed demands.

But defendant in error, in its evidence on the trial, also attempted to show that the assured, Job M. Hayes, made such false representations, in his application for insurance, respecting his prior use of intoxicants, as that the policy was thereby avoided. Upon this issue the jury found against defendant in error, and after a careful examination of the evidence we are satisfied the finding of the jury was correct. The Appellate Court reversed the judgment of the circuit court, and found

as a fact that the defendant in error did not procure the settlement and surrender of the policy by practicing the fraudulent acts charged. The fraudulent acts charged were, that defendant in error procured the settlement with the guardian, and his release, by fraudulently representing that the assured had made false statements, in his application for insurance, as to his prior use of intoxicants, knowing them to be false. The Appellate Court exonerated defendant in error from the charge,—not that it did not make the representations, but that they were not made falsely and fraudulently. By no fair construction can this finding by the Appellate Court be held to have been different from the circuit court upon the issue as to whether or not the representations of the assured, in his application for insurance, were falsely and fraudulently made.

Under the statute, the Appellate Court, where it finds the facts differently from the trial court, must recite in its final order "the facts as found," and such finding is conclusive upon this court. But where, as in this case, several causes of action are properly joined in the declaration, and the finding of facts by the Appellate Court is not inconsistent with a right of recovery upon one of the causes of action shown in the declaration, and there is evidence upon which the general verdict and judgment for the plaintiff may rest, and the trial court committed no error in law, it will be error in the Appellate Court not to affirm the judgment of the trial court, notwithstanding the adverse finding of the Appellate Court as to facts necessary to support the action, set out in the other counts of the declaration; and upon the failure of the Appellate Court to find the facts differently from the trial court upon both causes of action set forth in the declaration, it will be considered that as to the cause of action whereof there is no finding of fact, the Appellate Court found the facts as did the court below.

Finding, as we do, that here the plaintiffs in error had a good cause of action maintainable under the count in trover, and the Appellate Court having found no fact inconsistent with

the right of recovery in trover, it is held, that in respect thereof the finding of the Appellate Court was the same as that of the trial court upon every matter necessary or material to maintain the action under that count in the declaration, and it was error in the Appellate Court not to have affirmed the judgment of the circuit court upon such count.

The judgment of the Appellate Court is reversed, and that of the circuit court affirmed.

*Judgment reversed.*

Mr. JUSTICE CRAIG, dissenting.

Mr. JUSTICE WILKIN took no part in the consideration of this case.