## James A. Bingham v. William C. Browning.

1. UNLIQUIDATED DEMANDS—*Defined.*—Where there is a *bona fide* dispute as to the amount due from one party to another the matter is to be considered as an unliquidated demand.

2. SAME—*When the Acceptance of a Less Sum than is Claimed Discharges the Debt.*—Where there is a dispute as to the amount due, and the debtor makes an offer of a certain sum to settle the claim and attaches to his offer the condition that the same, if taken at all, must be received and accepted in full satisfaction of the entire claim in dispute, and the party receives the money, he takes it subject to the condition attached to the offer, and it will operate as an accord and satisfaction; for the mere act of accepting the money is an agreement to take it on the conditions upon which it was offered.

3. LIQUIDATED DEMANDS—*When the Acceptance of a Less Sum than is Due Does Not Discharge the Debt.*—Where a demand is liquidated and liability is not in good faith disputed, the acceptance of a less sum than that due to the creditor does not of itself discharge the debt, even where a receipt in full is given, for the element of a consideration is lacking and the obligation of the debtor to pay the entire debt is not satisfied.

Assumpsit.—Attachment in aid. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed October 10, 1901.

Statement.—The suit in which the judgment rendered was appealed from was in attachment by appellant against appellee. The declaration is in assumpsit and contains a special count and the common money counts. The defendant filed a number of pleas on which issue was taken,

Bingham v. Browning.

and the cause was submitted for trial to the court without a jury. The court found the issues for the defendant and rendered judgment accordingly. The parties made the following stipulation, which was read in evidence on the trial:

"It is stipulated and agreed by and between the parties to the above entitled cause, by their respective attorneys, that on the trial of said cause the following facts shall be taken as being true for the purposes of this case, without any evidence being produced thereof, to wit:

"That on and prior to July 12, 1898, the firm of Henry W. King & Company was doing business in the city of Chicago, consisting of eight or nine partners; that the plaintiff and defendant were members of the said firm; that E. W. Dewey came to Chicago in June, 1898, as the agent of the defendant; that as the agent of the defendant, the said Dewey asked the plaintiff to submit to the defendant a proposition upon which the plaintiff would sell out to the defendant all his interest in the said copartnership; that thereupon, about the middle of June, 1898, the said Bingham submitted to said Dewey a proposition which was unsigned, and was as follows:

'Chicago, June 11, 1898.

Mr. Dewey:

*Dear Sir:* In compliance with your suggestion, I submit the following proposition:

Will settle July 1st for $75,000—my original capital—and waive all interest in good will and fixtures of Browning, King & Company, and Henry W. King & Company also, in the interest and profits for this year. Will stay until January 1st, if wanted at a salary of $1,000 per month.

|           |                          |
| --------- | ------------------------ |
| $75,000.  | Original capital.        |
| 28,410.   | My note January 1st, 1898. |
| $46,590.  | Due me then.             |
| 11,250.   | Good will.               |
| 5,000.    | Fixtures.                |
| $16,250.  |                          |
| 1,634.    | Interest due July 1st.   |
| $17,834.  |                          |

$64,474.  Total.

Due me without profits for this year:

| | |
|---|---|
| $16,250. | Good will. And fixtures in Browning, King & Company, and Henry W. King & Company, as per our article of agreement. |
| 1,634. | Interest to July 1st. |
| 10,526. | Balance on my note, after credit for good will, interest and fixtures accounts, as above. |

$28,410.

'In lieu of the credit for balance on my note—good will and fixtures. Interest on capital (as above) with the balance of capital to my credit of $46,590, would reinstate my original capital of $75,000. And in consideration of my long connection with this business, and poor prospect of being able to continue in the business longer, also for the past few years not having enough profit from it to pay my living expenses, I feel that it would not be unfair to ask that the original amount I put in the business be returned; therefore I propose that if you pay me $75,000 July 1, 1898, or within sixty days of that time, I will relinquish all my interest in the business of Browning, King & Company, and Henry W. King & Company, and waive all interest in the good will, fixtures and profits of the business for the year 1898, and retire from the concern—or, if wanted, will remain until January 1, 1899, at a salary of $1,000 per month.'

"That upon receiving the same the said Dewey, without any action thereon, took the same to New York to submit the matters to said defendant. That afterward, on July 12, 1898, on said Dewey's return to Chicago from New York, after seeing said defendant, the said Dewey, acting for and on behalf of said defendant, presented to the plaintiff at Chicago, in said county, a paper in writing, which is below herein set forth, and on behalf of defendant proposed to plaintiff that the plaintiff and defendant make and enter into that agreement, to which the plaintiff thereupon assented; and the said plaintiff, and the defendant, by said Dewey, his attorney in fact, on the day and year last mentioned, at Chicago aforesaid, executed and delivered the said agreement in duplicate, in form, as so proposed by said Dewey, which agreement was in the words and figures following, that is to say:

'Agreement made this first day of July, A. D. 1898, between James A. Bingham, of Chicago, party of the first part, and William C. Browning, of New York City, party of the second part.

Bingham v. Browning.

'The parties hereto, each in consideration of the covenants and agreements of the other hereinafter expressed, do mutually covenant and agree to and with one another as follows, that is to say:

'First: The first party in consideration of the sum of seventy-five thousand dollars ($75,000), payable as hereinafter stated, and of the release, cancellation and discharge of all indebtedness of the first party to the copartnership of Browning, King & Company, whether in the shape of promissory notes, or other obligations, or open book accounts, hereby sells, assigns, transfers and conveys unto the said second party all right, title and interest of the first party in and to the capital stock of said copartnership of Browning, King & Company, and Henry W. King & Company, and all interest in the fixtures, furniture, good will and any and all assets and property of every description whatever, belonging to and owned by said copartnership, and all the interest of the first party in and under the certain articles of copartnership between the members of said copartnership of date January 1, 1895, and in and to any and all assets and property therein mentioned.

'Second: Said second party agrees to pay said first party the sum of seventy-five thousand dollars in the manner following, to wit: Ten thousand dollars ($10,000) in cash, the receipt whereof is hereby acknowledged; and sixty-five thousand dollars ($65,000), thirty (30) days after demand therefor by first party, with interest thereon from July 1, 1898, at the rate of five per centum (5%) per annum, said sixty-five thousand dollars ($65,000) to be payable at all events on or before July 1, 1899. Said second party also undertakes and agrees to procure, cancel and deliver to the said first party any promissory note or other written obligation of said first party to said copartnership of Browning, King & Company, and Henry W. King & Company, and also to deliver to said first party a receipt and release in full for any and all obligations or any amount on open book account due from said first party to the said copartnership.

'Third. The first party agrees that he will not for a period of three (3) years from July 1, 1898, engage in the business of selling at retail clothing, furnishing goods, hats and caps in competition with the business of said copartnership of Browning, King & Company, and Henry W. King & Company, at any place where the business of said copartnership was established on the first day of July, 1898, to wit, at either or any of the following cities: Chicago,

Milwaukee, St. Paul, Minneapolis, Omaha, Kansas City, St. Louis, Cincinnati, Cleveland, Philadelphia, New York, Brooklyn, Providence, Boston.

'Fourth.    Said James A. Bingham hereby expressly agrees that the business of said copartnership of Browning, King & Company, and Henry W. King & Company, may be continued under said names in accordance with the articles of copartnership of date January 1, 1895, until December 31, 1898, to the same extent as though the first party had not hereby sold his interest therein (except, as between the parties to said articles), and that no publication of dissolution of said copartnership shall be had prior to January 1, 1899, provided, however, and the second party expressly undertakes and agrees that he will indemnify and save the first party harmless from any and all obligations of said copartnership of Browning, King & Company, and Henry W. King & Company, whether incurred prior or subsequent to July 1, 1898.

'Fifth.    The first party further agrees that at any time hereafter and from time to time upon request of the second party he will execute such further contracts, instruments or conveyances as second party may require for more effectually transferring or conveying any portion or all of the copartnership property herein referred to.

'In witness whereof, the parties hereto have hereunto, and to a duplicate hereof, set their hands and seals the day and year first above written.

James A. Bingham,    [Seal]<br>
Wm. C. Browning,    [Seal]<br>
By E. W. Dewey,<br>
Attorney in Fact.'

"And at the same time with the execution of said agreement, the said Dewey on behalf of defendant on said July 12, 1898, paid to plaintiff the sum of $10,000, the receipt of which by the plaintiff is acknowledged in said agreement.

"That on July 7, 1898, and on divers days theretofore, and after the time when said Bingham presented said statement to said Dewey about the middle of June, 1898, the said Bingham drew from the moneys of the copartnership divers sums of money. amounting in the aggregate to the sum of two thousand dollars, which sums were at first carried by the bookkeeper on tickets, and the said aggregate amount of which, viz., $2,000, was on said July 7, 1898, charged to plaintiff upon the books of account of said firm, and which amount was never repaid the plaintiff, and that the same stood and remained to his debit on open book

account upon the books of said firm thence until and on the 12th day of July, 1898, when the said written agreement was signed and delivered as aforesaid. There is no admission in this stipulation (other than is herein contained) as to the exact days upon which all the sums making up the said total of $2,000 were drawn out by the plaintiff. Each party is left to offer such proof upon that point as he may see fit.

" That said plaintiff was indebted to said firm at the time he submitted said proposition to said Dewey and thence until and at the time of making and delivering said agreement on July 12, 1898, upon certain promissory note or notes theretofore given by him to said firm.

" That after the execution of said contract sued upon in this action, and before December 1, 1898, the said defendant became the owner of all the assets of the said copartnership of Henry W. King & Company, and so remained up to the time of the institution of this suit.

" That the said plaintiff has never repaid to the copartnership of Henry W. King & Company, or the defendant, or any one else, the said sum of two thousand dollars ($2,000) obtained by him on July 7, 1898.

" The foregoing stipulation is upon the condition and agreement that either party may offer in evidence the foregoing stipulation or any part thereof, and that upon its being so offered that the foregoing evidence and each and every part thereof shall remain and be and is subject to objections by the other party to its competency, materiality or relevancy precisely as if proof of such respective facts, instead of the stipulation, were so offered upon the trial; and that either party is at liberty upon the trial to introduce other evidence as he may be advised.

Peck, Miller & Starr,
Attorneys for Plaintiff.
Bentley & Burling,
Attorneys for Defendant."

The plaintiff put in evidence the following letters :

" New York, Nov. 30, 1898.

My Dear Mr. Bingham:

I am in receipt of your favor of November 28th. If it would be just as convenient to you and you could use it, I would send you the balance immediately; if you can use it so that it is worth telegraphing for, do so; if not, drop me a line and let me know.    Very truly yours,

William C. Browning.

James A. Bingham, Union League Club, Chicago, Ill."

"New York, Dec. 15, 1898.

My Dear Mr. Bingham :

Will you please upon receipt of this send me a memorandum of your account as you figure it and the balance I shall have to send you in a check to close up the matter January 1, 1899. I do this to check back my figures.

Very truly yours,

William C. Browning."

"December 24th, 1898.

William C. Browning, Esq.

Dear Sir : On my return to the city yesterday I received your favor of November 30th and December 15th. In reply to the first I will say that I have made arrangements to invest my money on January 1st, and therefore do not wish it before that time. I don't quite understand your second letter in which you ask for a memorandum of the amount due me, as it seems simple enough. The obligation of seventy-five thousand dollars reduced by cash payment of ten thousand dollars, would leave sixty-five thousand dollars. Five per cent interest on this amount for six months, sixteen hundred and twenty-five dollars, would leave a total due me of sixty-six thousand six hundred and twenty-five dollars, which I think must be correct.

Yours truly,

James A. Bingham."

"New York, December 27th, 1898.

Mr. James A. Bingham, care Union League Club, Chicago, Ill.

Dear Sir : I have your letter of December 24th. I have also a statement of your account from Mr. Frank King; he says that on the 7th of July you drew two thousand dollars, which of course wants to be deducted from the payment, and now as your settlement was made under date of July 1st, I will forward the money to Mr. Frank King so that it will reach you Monday, January 2d, and if you will please call upon him he will hand you the same.

Very truly yours,

William C. Browning. "

"December 29, 1898.

Mr. W. C. Browning:

Dear Sir : Yours of December 27th received. I am surprised that you wish to deduct two thousand dollars from the amount that you pay me, as it was understood between Mr. Dewey and myself that my personal account was not to be taken into consideration in the settlement

when he was here in June.  He asked me to submit a proposition upon which I would settle with you and retire from the concern on the 1st of July.  I told him that if I was to retain an interest in the business in the future, I would settle on the same basis the balance of you did, but if not I should want the original amount I put into the business when we made up the last partnership, returned to me, which would only give me a living for my services for the past four years, which I felt I was entitled to.  He returned there and submitted his proposition to you and returned here about July 1st.  He did not accept the proposition and make a settlement with me until July 12th when a contract was signed, and I did not draw a dollar from the concern after that time.  The two thousand dollars referred to in your letter was a ticket; Mr. Benson was holding different amounts I had drawn previous to the time it was charged to me, and Frank King says he had told Mr. Dewey about this ticket at the time he made the settlement, and to me it does not seem fair or right to ask me to deduct this amount now.               Yours truly,

JAMES A. BINGHAM."

Bingham, the plaintiff, having testified on his own behalf that he remembered writing the above letter of date December 29, 1898, was questioned and answered as follows:

Q.  "What followed the writing by you of that letter?"  A.  "What followed?"

Q.  "Yes; you got some money, some payments, did you?"  A.  "Yes, sir; I settled with the— I accepted the money that was sent."

Plaintiff then testified that before accepting the money he consulted his attorney in regard to giving a receipt for it, and then went to Frank King and told him that he, witness, thought it was unfair, and objected to receiving that amount, and told him that he would like to receipt for the amount of money he received, and King told him that he, King, could not do that; that he could not pay the money without taking a receipt in full, and that as he, witness, had to use the money at that time, he accepted and gave the receipt.  He says that this occurred January 2, 1899.  Frank King, who had been a partner in the firm of Henry King & Company until July, 1898, was, at the time

of the conversation testified to by plaintiff, acting as Mr. Browning's representative or agent in Chicago, Browning being a resident of New York City. Bingham further testified that he received from King $64,585.35; that what he claimed was $66,625, as mentioned in his letter of December 24, 1898; that the $2,000 was deducted from what he claimed; that he drew nothing from the firm of Henry W. King & Company after July 12, 1898. On cross-examination the witness admitted signing a receipt shown him, and testified that he received a New York draft for the money receipted for; that he got no premium on the draft, and didn't state to Frank King that he had, and that he had never claimed that he had drawn all of the $2,000 prior to July 1, 1898, but had claimed that he thought part of it had been drawn out prior to that date.

The foregoing was substantially all the plaintiff's evidence in chief. The defendant put in evidence the receipt, the signature to which had been admitted by the plaintiff. The receipt is as follows:

"Chicago, December 31, 1898.

Received of Henry W. King & Company, and of William C. Browning, individually, the sum of ($64,585.35), sixty-four thousand five hundred and eighty-five and 35-100 dollars, being in full payment of all claims of any name or nature against the said firm of Henry W. King & Company, and Browning, King & Company, and William C. Browning, individually.

James A. Bingham."

The defendant called as a witness E. W. Dewey, formerly partner in the firm of Henry W. King & Co., whose testimony is merely that about the middle of June, 1898, he came to Chicago as Mr. Browning's agent; that after he received Bingham's proposition, he went to New York, returned to Chicago June 30th, left Chicago again July 1st, returned July 7th, and had the contract contained in the stipulation prepared by an attorney.

Frank King, called by defendant, testified that in December, 1898, he was acting as Mr. Browning's representative in Chicago; that he had three conversations with plaintiff

at witness' office, about his claim against Mr. Browning; that the first time he, plaintiff, showed witness a statement of Browning and said it was not right; that he should receive $2,000 more; that that amount had been drawn out before July 1st; when witness told him that he did not know without looking up the books; that in a day or two after, Bingham again called on witness, with Mr. Benson, cashier of Henry W. King & Co., to find the dates of the items composing the $2,000; that witness got the check books stubs, which Benson examined, and showed that the checks were drawn after July 1st. The following then occurred in this witness' examination:

" Q.    And what did Mr. Bingham say then ?    A.    Why, he was surprised, that is all.

Mr. Miller :    I object to that.

The Court :    Strike that out.

Witness :    That is what he said."

Witness further testified that the next time plaintiff came in, he said he had received a letter from Mr. Browning and wanted to know if witness had received a check from him, and witness told him he had, and offered it to him, and he declined to accept it, saying it was not right, and when witness asked him to sign the receipt he refused, when witness told him he did not know what his contract with Browning was, and that if he, plaintiff, desired, he would write to Browning; that plaintiff came in the next day, witness thinks in the morning, and said he would accept the check, and witness handed him the receipt and he signed it and said it made no difference whether he signed it or not; that witness remarked to him that New York exchange was at a premium, and he might take advantage of it; that afterward witness met him and asked him if he had done anything with the check, and he said he had, that he had received thirty or forty dollars in exchange on it.    On cross-examination, the witness testified that when plaintiff told him the money was drawn out before July 1st, Henry W. King & Co.'s books were in witness' possession and control; also, that he did not recol-

lect whether plaintiff told him that he had advised with counsel as to signing the receipt.

Bingham, plaintiff, recalled on his own behalf, testified that the performance of his duties as partner in the firm of Henry W. King & Co. ceased on signing the contract July 12, 1889.

Frank King, recalled by defendant, testified that he sold his interest as a partner in the firm of Henry W. King & Co. July 1, 1898, to Mr. Browning; that he signed the contract with Browning July 11th or 12th, and that it took effect July 1st.

The following additional stipulation was made by the parties, and read on the trial:

" It is stipulated by and between the parties to the above entitled cause, by their respective attorneys, that for the purposes of this trial, it may be considered as proved that of the two thousand (2,000) dollars which was charged to James A. Bingham on the books of Henry W. King & Company, on July 7, 1898, one hundred and twenty-five (125) dollars was drawn by the said Bingham from the moneys of the copartnership of Henry W. King & Company, on July 1, 1898, and that eighteen hundred and seventy-five (1,875) dollars, to make up the said aggregate sum of two thousand (2,000) dollars, was drawn out by the said Bingham from the moneys of the copartnership of Henry W. King & Company, on divers days after July 1, 1898, and prior to July 8, 1898.

PECK, MILLER & STARR,
Attorneys for plaintiff.
BENTLEY & BURLING,
Attorneys for defendant."

PECK, MILLER & STARR, attorneys for appellant.

BENTLEY & BURLING, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The foregoing somewhat lengthy statement of facts has been made in view of the probability that, whatever our decision may be, the cause will be taken to the Supreme Court for final adjudication. Counsel for appellant rely on the general legal proposition that a contract takes effect, as

to the parties to it, at the date of its delivery, and argue that the contract in question having been signed and delivered July 12, 1898, the appellee, Browning, is liable, under his contract, to discharge the indebtedness of appellant to the firm of Henry W. King & Co., which indebtedness consisted of sums of money drawn from that firm by appellant between July 6, 1898, and the time of the execution of the contract, amounting in all to $2,000. We are of opinion, however, that the vital question in the case is as to the effect of the receipt of date December 31, 1898. In the discussion of this question counsel for appellant rely on the legal proposition that the payment by the debtor and acceptance by the creditor of a less sum than is actually due, will not, although agreed to by the creditor, extinguish the debt; citing Hayes v. Mass. L. Ins. Co., 125 Ill. 626, and other cases. The American editor of Smith's Leading Cases, in the notes to the case of Cumber v. Wane, 1 Smith's Leading Cases, 9th Am. Ed., 606, 621, after citing a number of cases in which the rule has been applied, says:

" But it is to be noticed that these are largely early cases. In many of these States attempts have been made in later decisions to overthrow this rule. The foundation of it seems to be that ' in the case of the acceptance of a less sum of money in discharge of a debt, inasmuch as there is no new consideration, no benefit accruing to the creditor, and no damage to the debtor, the creditor may violate, with legal impunity, his promise to his debtor, however freely and understandingly made. This rule, which obviously may be urged in violation of good faith, is not to be extended beyond its precise import; and whenever the technical reason for its application does not exist, the rule itself is not to be applied. Hence judges have been disposed to take out of its application all those cases where there was any new consideration or any collateral benefit received by the payee which might raise a technical legal consideration, although it was quite apparent that such consideration was far less than the amount of the sum due.' Brooks v. White, 2 Met. 283. So that even where the rule prevails it is overburdened with qualifications, nice distinctions and equivocal approbations, and courts are not unready to find grounds for avoiding its application."

A number of cases are cited in support of the text of the note. Ib. 621–2.

In C., M. & St. P. Ry. Co. v. Clark, 178 U. S. 353, the court, Fuller, C. J., delivering the opinion, say:

"While the general rule must be regarded as well settled, it is considered so far with disfavor as to be confined strictly to cases within it," citing a number of cases in support of this statement. In the case cited, Clark claimed a much larger amount than the company paid him, but he signed a receipt for the amount which the company paid, as follows:

"Now, therefore, be it known that I, Heman Clark, have received of and from the said Chicago, Milwaukee and St. Paul Railway Company the sum of one hundred and seventy-three thousand five hundred and thirty-two and 49-100 dollars ($173,532.49), in full satisfaction of the amount due me on said estimates, and in full satisfaction of all claims and demands of every kind, name and nature, arising from, or growing out of, said contract of March 6, 1886, and of the construction of said railroad, excepting the obligation of said railway company to account for said forty thousand dollars, as hereinbefore provided.

HEMAN CLARK."

The receipt was not under seal. The court held that the receipt was a bar as to all claims against the company existing when the receipt was given, and rendered judgment in Clark's favor for the sum of $2,425, on a claim which accrued after the receipt was given. Ib. 372.

That the rule is technical and subject to numerous exceptions, is also stated in Tanner v. Merrill, 108 Mich. 58, citing many cases.

It is claimed by counsel for appellant that the amount due from appellee to appellant was liquidated by the contract itself. We understand the rule to be that (if there is a *bona fide* dispute as to the amount due), it must be considered as unliquidated. In Railway Co. v. Clark, *supra*, the court, commenting on a finding of the referee, says:

"If it means that the statement of account as to these items was disputed, then the contention is a reasonable one, that such dispute was a sufficient reason to support the settlement in its entirety."

Bingham v. Browning.

The following authorities support the proposition that when any part of the demand is, in good faith, disputed, it is unliquidated. Fuller v. Kemp, 138 N. Y. 231; Nassoiy v. Tomlinson, 148 Ib. 326; Tanner v. Merrill, 108 Mich. 58; Ostrander v. Scott, 161 Ill. 345.

In Fuller v. Kemp, the court say:

" Where the demand is liquidated, and the liability of the debtor is not in good faith disputed, a different rule has been applied. In such cases the acceptance of a less sum than is the creditor's due will not of itself discharge the debt, even if a receipt in full is given. The element of a consideration is lacking, and the obligation of the debtor to pay the entire debt is not satisfied. There are many authorities which enforce this proposition, but they have no relevancy to a case like the present, where the debt was unliquidated, and there was a *bona fide* disagreement in regard to the extent of the debtor's liability."

In that case there was a dispute between the plaintiff and the defendant as to the amount of a physician's bill of the defendant, the latter claiming $670 and the former contending the charge was excessive. The defendant inclosed to the plaintiff in a letter a check for $400, stating that the check was sent in full satisfaction of the plaintiff's claim. The plaintiff cashed the check, retained the money, and sent his bill to defendant for the balance, $270, and subsequently sued for it. *Held*, that the plaintiff having retained the check and its proceeds, there could be no recovery. In Nassoiy v. Tomlinson, *supra*, the court say :

" A demand is not liquidated, even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction."

In that case the plaintiff claimed there was due to him from the defendant $1,500 commission for his services in selling real estate owned by the defendants. The defendants sent him a letter inclosing a check for $300, expressing it to be " 1 per cent on $30,000, your commission on the sale,"

and requesting him to sign and return a voucher, which was also enclosed in the letter. The voucher was in these words:

"SUSPENSION BRIDGE, NEW YORK, 1887.

Received of the Tomlinson estate three hundred dollars, in full for commissions for sale to J. A. Weston of 66 acre lot, $300."

Plaintiff retained the check, drew the money on it, and did not sign or return the voucher. He sued to recover $1,200, the balance which he claimed to be due him. *Held*, there could be no recovery, the court saying, among other things:

"We think that the undisputed evidence shows conclusively that the offer was made in settlement of the claim, and that the plaintiff so understood it, when, by using the check, he accepted the offer." Ib. 331.

The court further say:

"The plaintiff can not be permitted to assert that he did not understand that a sum of money, offered 'in full,' was not, when accepted, a payment in full. As was said in Hills v. Sommer (53 Hun, 392, 394), he was 'bound either to reject' the check, 'or, by accepting it, to accede to the defendant's terms.' The money tendered belonged to them, and they had the right to say on what condition it should be received. 'Always the manner of the tender and of the payment shall be directed by him that maketh the tender or payment and not by him that accepteth it.' (Pinnel's case, 5 Co. 117.) The plaintiff could only accept the money as it was offered, which was in satisfaction of his demand. He could not accept the benefit and reject the condition, for if he accepted at all it was *cum onere*. When he indorsed and collected the check referred to in the letter asking him to sign the inclosed receipt in full, it was the same, in legal effect, as if he had signed and returned the receipt, because acceptance of the check was a conclusive election to be bound by the condition upon which the check was offered. The use of the check was *ipso facto* an acceptance of the condition. The minds of the parties then met so as to constitute an accord, and, as was said by this court in Fuller v. Kemp (133 N. Y. 231), 'the acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference from the transaction.'"

In Tanner v. Merrill, *supra*, the court say:

" The important fact to ascertain is whether the plaintiff's claim was a liquidated claim or not. If it was, there was no consideration for the discharge. If not, the authorities are in substantial accord that part payment of the claim may discharge the debt, if it is so received. Upon the undisputed facts, the claim of the plaintiff, as made, was not liquidated. It was not even admitted, but, on the contrary, was denied, because the defendants claimed that it had been partially paid by a valid offset. While the controversy was over the offset, it is plain that the amount due the plaintiff was in dispute."

In Ostrander v. Scott, 161 Ill. 339, the court say:

" The authorities are numerous and uniform that a payment of a part of a fixed and certain demand which is due and not in dispute is no satisfaction of the whole debt, even where the creditor agrees to receive a part for the whole and gives a receipt for the whole demand. (Bishop on Contracts, Sec. 50; 2 Parsons on Contracts, (5th ed.), 618; Curtis v. Martin, 20 Ill. 557; Morrill v. Baggot, 157 Id. 240; Titsworth v. Hyde, 54 Id. 386.) This doctrine rests upon the ground that the agreement for a discharge of the entire debt is without consideration. But it is limited to cases where the debt is of the character stated. It has no application to the honest settlement of unliquidated or disputed demands. (Haves v. Massachusetts Life Insurance Co., 125 Ill. 626.) The rule disregards the actual intention of the parties, and if the balance due is disputed and the subject of an honest settlement and adjustment by the parties, such settlement will bar a recovery." See also Lapp v. Smith, 183 Ill. 179, 183.

We are of opinion that there was a *bona fide* dispute between the parties in the present case as to whether the defendant was bound to pay the indebtedness of the plaintiff to the firm of Henry W. King & Co., incurred between July 6, 1898, and the execution of the contract. There was room for such a dispute between men unlearned in the law. In appellant's proposition to appellee, of date June 11th, he proposed to settle July 1st for $75,000, and estimates interest on an item contained in the proposition to July 1st. The agreement executed July 12th is dated July 1st, and, by the agreement, interest on the deferred pay-

ment of $65,000 is to be estimated from July 1st. That
there was a dispute is sufficiently evidenced by appellee's
letter to appellant of date December 27, 1898, and appel-
lant's answer to that letter of date December 29, 1898.
The trial court, exercising the province of a jury, must
have found, as a fact, that there was a genuine dispute
between the parties as to the amount, and we think this find-
ing of fact warranted by the evidence. Appellant, at the
time he gave the receipt in question, had full knowledge
of all the facts. He knew its purport, because he at first
refused to sign it on the express ground that it purported
to be in full of all claims. There is no evidence of fraud,
mistake or duress in respect to the receipt. Appellant's
own testimony shows that he fully understood the purport
of the receipt, and that in signing it he acted voluntarily
and deliberately. He testified:

"I went over to Mr. Frank King, and I told him that I
thought it was entirely unfair, and objected to receiving
that amount of money, and I told him that I would like to
receipt for the amount that I received. He stated that he
could not pay the money without taking a receipt in full,
and, as I had to use the money at that time, I accepted it
and gave the receipt."

In C., M. & St. P. Ry. Co. v. Clark, *supra*, the court say:

"Without analyzing the cases, it should be added that it
has been frequently ruled by this court, that a receipt in
full must be regarded as an acquittance in bar of any further
demand, in the absence of any allegation and evidence that
it was given in ignorance of its purport, or in circumstances
constituting duress or fraud," citing prior decisions of the
court.

In Ostrander v. Scott, 161 Ill. 339, the plaintiff, Scott,
had an undisputed bill against the defendants, Ostrander
et al., amounting to $5,282.57, but the defendants claimed
an offset to the bill of $1,210, which was disputed. The
defendants wrote a letter to the plaintiff, inclosing their
check for $4,072.57, and plaintiff's bill for $1,210. The
plaintiff retained the check and drew the money on it. The
check was expressed to be "in full of all demands to date,"
and the letter inclosing it stated it to be "in full of account

to date." Scott sued for $1,210, the balance which he claimed to be due him. The court held there could be no recovery, saying, among other things:

"It was the right of the plaintiff to accept the check upon the terms proposed, or to reject it; but there could be no modification of the terms by his will alone, without the concurrence of the defendant."

The following language of the court is especially applicable to the facts of the present case:

"The check was made on its face as payment in full of all demands to date, and the effect, when it was received, indorsed and collected, was the same as if it had been tendered accompanied with a receipt to be signed in full of all demands to date, and the plaintiff had received the check and signed the receipt."

In the present case the check or draft was accompanied with a receipt to be signed by appellee, "in full payment of all claims," etc., and he was informed that the check would not be delivered to him unless he signed the receipt, and he received the check and signed the receipt.

In Lapp v. Smith, 183 Ill. 179, there was a dispute between the parties as to the plaintiff's claim, the defendant denying that it had matured, and also claiming a set-off. Under these circumstances the defendants wrote to plaintiffs, inclosing a check for $500, and three promissory notes. It was plainly stated in the letter that the check and notes were sent as a settlement. The plaintiffs retained the check, collected it, and credited the amount of it on the defendants' account, and tendered back to defendants the notes, which they refused to receive unless accompanied with the check. Plaintiffs sued for the balance which they claimed, but the court held they could not recover. The court say:

"In Fuller v. Kemp, 138 N. Y. 238, which involved the same principle, it was said: 'The tender and the condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent of the creditor to the

terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of this act.' And in McDaniels v. Bank, 29 Vt. 230, the court said : ' When a party makes an offer of a certain sum to settle a claim, when the sum in controversy is open and unliquidated, and he attaches to his offer the condition that the same, if taken at all, must be received in full satisfaction of the claim in dispute, and the party receives the money, he takes it subject to the condition attached to it, and it will operate as an accord and satisfaction.    *    *    *    The mere act of receiving the money is an agreement to accept the same on the conditions upon which it is offered.' The doctrine of these cases is applicable here."

It will be observed that the New York and Illinois decisions cited are not so strong for the defendants, respectively, as is the present case for appellee; because in those cases no receipt was signed by the creditor, whereas in the present case appellant knowingly, voluntarily and deliberately signed a receipt in full of all claims.    We are of opinion that the receipt given by appellant is a bar to recovery in the present case.

We find no reversible error in the record, and the judgment will be affirmed.