106 Ill.2d 111 (1985)
477 N.E.2d 488
In re ESTATE OF DANIEL SWIECICKI, a Minor (The Farmers and Merchants Bank of Highland, Appellant,
v.
Chester J. Swiecicki, Appellee).
No. 59877.
Supreme Court of Illinois.
Opinion filed April 19, 1985.
*112 *113 *114 *115 Donald C. Rikli, of Highland, for appellant.
Earl L. Vuagniaux, of Earl L. Vuagniaux, A Professional Corporation, of Edwardsville, for appellee.
William R. Dillon, of Concannon, Dillon, Snook & *116 Morton, of Chicago, for amicus curiae Corporate Fiduciaries Association of Illinois.
Judgment affirmed.
CHIEF JUSTICE CLARK delivered the opinion of the court:
Chester Swiecicki, the successor guardian of the estate of Daniel Swiecicki, filed objections in the circuit court of Madison County to the final report and account of the Farmers and Merchants Bank of Highland, the prior guardian to Daniel's estate. The circuit court overruled the objections. The appellate court, in a divided opinion, reversed the circuit court. (121 Ill. App.3d 705.) The bank petitioned this court for leave to appeal, and its petition was granted. We affirm the appellate court.
Daniel Swiecicki was born in 1969. His parents died June 18, 1977. The bank was appointed the guardian of Daniel's estate on June 9, 1978, and submitted its resignation as the guardian of his estate on January 30, 1981. While acting as the guardian of Daniel's estate, the bank held over $60,000 of Daniel's money in its own savings accounts from December 1979 until February 1980, and again from August 1980 until December 1980. These accounts paid 5 1/4% interest. During the time Daniel's money was not invested in these savings accounts, his money was placed in two certificates of deposit in the bank. One certificate was for $30,000 and was held from February 23, 1980, until August 1, 1980. The second certificate was for $4,000 and was held from February 23, 1980, until August 25, 1980. In addition, a certificate of deposit in the First National Bank of Nashville for $30,000 was held from February 19, 1980, until August 7, 1980. These three certificates of deposit paid interest of between 11% and 13%. After these certificates of deposit were redeemed, the bank invested the money, including the interest, in its own savings account, which paid 5 1/4% interest. On December 11, 1980, the bank invested $70,000 of Daniel's money in a *117 certificate of deposit which paid interest of 14.8%. The balance of Daniel's money remained invested in a savings account. On April 8, 1981, the successor guardian received the $70,000 certificate of deposit from the bank as well as a check totaling $8,260.20. This sum represented the balance and interest from the savings account.
The bank profited from Daniel's money while it acted as guardian of his estate by making commercial loans with his money at interest rates higher than the interest rates the bank paid to Daniel. The bank's profits occurred while Daniel's money was held in the savings accounts, as well as in the certificates of deposit. In addition, the bank has received $743.31 as compensation for serving as the guardian of Daniel's estate.
In his objections to the final report and account of the bank, the successor guardian sought, among other things, a judgment against the bank for its profits from investing Daniel's money in its own accounts while acting as Daniel's guardian. The circuit court overruled the objections and approved the report. On review, the appellate court found that the bank breached its duty to serve its ward's interests with complete loyalty. Therefore, the court held that Daniel's estate was "entitled to the profit which the Bank made through the use of the estate's money." 121 Ill. App.3d 705, 707.
Having set forth the facts pertinent to this appeal, we now turn to the issue presented in this case, namely, whether a bank acting as the guardian of a minor's estate must account to the estate for profits it realizes from investing the corpus of the estate's funds in its own savings accounts and certificates of deposit.
Illinois law is clear that: (1) a fiduciary relationship exists between a guardian and a ward as a matter of law (Apple v. Apple (1950), 407 Ill. 464, 469) and (2) the relationship between a guardian and a ward is equivalent to the relationship between a trustee and a beneficiary *118 (Parsons v. Estate of Wambaugh (1982), 110 Ill. App.3d 374). Therefore, the fiduciary duties owed a beneficiary by a trustee and a ward by a guardian are similar. One such duty is the duty of loyalty. This duty prohibits a guardian from dealing with a ward's property for the guardian's own benefit. See Home Federal Savings & Loan Association v. Zarkin (1982), 89 Ill.2d 232, 239.
In Zarkin, this court discussed a breach of a trustee's duty of loyalty and stated:
"The reason for the prohibition on trustee's purchases of trust property is that a trustee in this position would find it in his own best interest to violate his duty to his beneficiary: as purchaser, the trustee is naturally interested in acquiring the property at the lowest possible price, while loyalty to the beneficiary dictates that he seek to obtain the highest possible price." 89 Ill.2d 232, 240.
These principles are applicable to the case at bar. The bank, as guardian of the minor's estate, would find it in its own best interest to violate its duty to its ward. As a bank, the bank was naturally interested in paying the lowest interest rate possible, while as a guardian, the bank's duty of loyalty to its ward dictated that it obtain the highest possible interest rate available for the ward's funds.
An officer of the bank testified at the hearing on the final report that "[t]he function of any Bank is to make money * * * to make a profit * * *."
We agree with the appellate court when it stated:
"In seeking to maximize this profit, a bank has an undeniable interest in acquiring at the least possible cost the monies which it will later use to make commercial loans. Thus, in the instant case, the Bank's financial motives and fiduciary responsibilities were incompatible. As `buyer' of Daniel's money for its own use, the Bank had an interest in acquiring the money at the lowest possible rate, in order to insure the profitability of that acquisition. As `seller' of that same money for the purpose of earning interest income for the estate, the Bank as *119 guardian was faced with the conflicting responsibility of considering only the interests of the estate in determining how to invest the estate funds." (Emphasis added.) 121 Ill. App.3d 705, 708.
This court, as well as other courts, has stated that when a fiduciary obtains profits from the use of a beneficiary's funds, "[h]e has no claims to such profits, and cannot appropriate them to his individual use." (Wingate v. Pool (1860), 25 Ill. 102, 104; see Childs v. National Bank (7th Cir.1981), 658 F.2d 487, 490; Whitney v. Peddicord (1872), 63 Ill. 249; Rowan v. Kirkpatrick (1852), 14 Ill. 1; In re Estate of Hardaway (1960), 26 Ill. App.2d 493, 497; Winger v. Chicago City Bank & Trust Co. (1945), 325 Ill. App. 459, 472, rev'd on other grounds (1947), 394 Ill. 94; Kelley v. Kelley (1973), 129 Ga. App. 257, 199 S.E.2d 399.) When profits are made by a guardian, they must be distributed as any other funds of the estate. See Wingate v. Pool (1860), 25 Ill. 102, 104.
With respect to the profits, it is true that had the bank invested Daniel's money in a bank other than itself, Daniel would not be entitled to the profits made by that bank. (In this case, Daniel is not entitled to profits made by the First National Bank of Nashville.) However, it must be remembered that the other bank would not have owed the duty of loyalty to Daniel as did the guardian bank in this case. A guardian of a minor is a trustee of the minor's property for the minor's benefit and is chargeable as such; the guardian must be held to have dealt with the minor's property for the benefit of the minor. In re Estate of Hardaway (1960), 26 Ill. App.2d 493, 497; In re Estate of Toman (1903), 110 Ill. App. 135, 138.
For the reasons stated, we believe that the bank had conflicting interests and, hence, divided loyalties. Therefore, we hold that Daniel's estate is entitled to the profits which the bank made through the use of the estate's money.
*120 Before we conclude, we will briefly address the remaining arguments presented by the bank. The bank first argued that section 21-1.03 of the Probate Act of 1975 (the Act) (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 21-1.03), implicitly permits a bank acting as guardian of a ward's estate to invest in its own savings accounts or certificates of deposit. Section 21-1.03 expressly permits such a practice for the representative of a decedent's estate.
However, section 21-2 of the Act (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 21-2) provides for the investments of a ward's estate. Although section 21-2.06 of the Act (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 21-2.06) allows a guardian of a ward's estate to invest in savings accounts or certificates of deposit in a State or national bank, this section does not expressly allow a guardian bank to invest in itself.
This court's function is to interpret the law as enacted by the legislature. (Belfield v. Coop (1956), 8 Ill.2d 293, 307.) Our function is "not to annex new provisions or substitute different ones, or read into a statute exceptions, limitations, or conditions which depart from its plain meaning." (8 Ill.2d 293, 307.) Like the appellate court, we "will not presume in this case that the legislature intended to significantly alter the common law fiduciary rules pertaining to guardians without saying so." (121 Ill. App.3d 705, 709.) Therefore, this argument is without merit.
The bank's second argument appears to be that the circuit court, by accepting the bank's final report and account, thereby approved the bank's actions. However, the successor guardian properly points out that "the acts of a guardian which transcended his statutory authority could not be approved or ratified by the probate court * * *." (Nonnast v. Northern Trust Co. (1940), 374 Ill. 248, 259.) As already discussed, section 21-2.06 of the Probate Act of 1975 does not specifically allow a bank *121 acting as the guardian of a ward's estate to invest in its own savings accounts and certificates of deposit. Therefore, the court did not have the authority to approve the bank's action. In addition, the bank, acting as the representative of Daniel's estate, did not petition the court for authority to place the funds in the types of investments sanctioned under section 21-2(d) of the Act (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2(d)).
The bank's third argument is that the trust department of a bank as guardian is separate from the commercial department of a bank as depository. The bank states that "the commercial department is not the guardian of the ward. The commercial department does not stand in a fiduciary relationship toward the ward; therefore, any profit made by the commercial department of the bank * * * can not be considered a breach of any fiduciary duty."
Both parties have cited outside authorities with regard to this argument. We, like the appellate court, find the cases relied on by the bank to be unpersuasive. We agree with the appellate court that "[t]here is nothing to suggest that, in reality, the bank here is anything other than one business entity, controlled by one board of directors and owned by a single set of stockholders. * * * [W]e think it unrealistic to rigidly compartmentalize the bank's business functions for purposes of analyzing its adherence to its fiduciary obligations." 121 Ill. App.3d 705, 708.
The successor guardian's brief cited a case on this point which is similar to the case at bar. In Rose v. Bank of Wadesboro (1940), 217 N.C. 600, 9 S.E.2d 2, a bank acted as the guardian of the estate of a minor as well as the administrator of her father's estate. The bank used funds which it received as the administrator of the father's estate in its commercial department. The court said:
"When a bank is an administrator or guardian and deposits money belonging to the estate of its intestate or *122 ward with itself to the credit of itself as administrator or guardian, such deposit is a general deposit, and the money thereby becomes mingled with the general funds of the bank and constitutes a use in the general business of the bank for its general benefit * * *.
While ordinarily an administrator is not chargeable with interest, still, if he collects interest he must account therefor * * * and this irrespective of the fact that the administrator is a bank and the money is made use of in its commercial department. The fact that the bank has two departments, a trust department and a commercial department, does not alter the fact that it is a single entity, doing business under one charter, and the use of money in one department inures to the benefit of the other department, and constitutes a use in its general business." (Emphasis added.) 217 N.C. 600, 607, 9 S.E.2d 2, 7.
See In re Binder's Estate (1940), 137 Ohio St. 26, 27 N.E.2d 939.
We believe that the bank, acting as Daniel's guardian, owed him a duty of loyalty. This duty was not owed by just one department of the bank but instead was owed by the bank as a whole.
The bank's final argument is that section 3 of "An Act to provide for and regulate the administration of trusts by trust companies" (Ill. Rev. Stat. 1983, ch. 17, par. 1555) applies to this case. The Corporate Fiduciaries Association of Illinois (the Association) filed an amicus curiae brief. The Association, as well as the successor guardian, argues that this statute does not apply to the present case.
We note that the bank failed to present this argument either in the circuit court or the appellate court. The general rule is that an argument presented for the first time on appeal is deemed waived. (Snow v. Dixon (1977), 66 Ill.2d 443, 453.) However, this court, relying on our Rule 366(a)(5) (87 Ill.2d R. 366(a)(5)), has considered arguments not presented in the trial court when the arguments *123 are based on the interpretation of a statute, the necessary facts are before us, the parties have briefed and argued the point, and the point is of public interest. (Cronin v. Lindberg (1976), 66 Ill.2d 47, 61.) Since all these factors are present in this case, we will briefly address this argument.
We do not believe that section 3 of "An Act to provide for and regulate the administration of trusts by trust companies" applies to this case. Section 3 applies only to funds "awaiting investment or distribution." In this case, the bank, while acting as the guardian, held the estate's funds in its own savings accounts and certificates of deposit for 2 1/2 years. In addition, at the hearing on the final report, an officer of the bank testified that "[t]he monies were brought in and invested in savings accounts and certificates of deposit." We cannot say that the estate's funds were "awaiting investment or distribution" in this case.
In conclusion, since this is the first clarification by this court that a bank acting as a guardian of a minor's estate must account to the estate for profits it realizes from investing the corpus of the estate's funds in its own savings accounts and certificates of deposit, we believe it is only equitable that we apply our holding prospectively. Therefore, our holding will apply only to this case and to all investments made or renewed after June 1, 1985.
For the above stated reasons, we affirm the holding of the appellate court.
Judgment affirmed.
JUSTICE SIMON, concurring in part and dissenting in part:
Although I concur in the holding that the bank breached its fiduciary duty, I dissent from the additional holding that this ruling is to be applied prospectively only.
*124 Our majority opinion is based upon the duty of loyalty owed by a fiduciary. In this case, the bank's duty as guardian was to protect the interest of its ward by investing the ward's funds in instruments paying the highest yield consistent with reasonably prudent principles of investment. The ward's interest conflicted with the bank's own commercial interest in increasing the amounts of money deposited in the bank at the lowest possible rates of interest. This potential conflict ripened into an actual breach of duty when the bank bypassed attractive investments outside the bank and deposited the ward's funds in low paying accounts in the bank.
I do not know how common the conduct we condemn here is among banks in Illinois. However, the majority's decision to apply its holding prospectively gives Illinois banks who have engaged in such conduct the opportunity to transfer guardianship funds into investments outside the guardian banks, and to avoid liability and penalties for their past conduct.
By so limiting our holding, in effect we are granting amnesty to banks for culpable conduct which enabled the banks to profit. Those sums rightfully belonged to the wards whose funds were entrusted to financial institutions for proper management. Wardship is a condition designed to protect society's most helpless and vulnerable members  minor children and mentally incompetent adults. It is a strange perversion of this protection where, as here, after properly recognizing that the law affords such protection, we act to minimize the loss to large financial institutions at the expense of the weak whose property it was the duty of banks to safeguard.
The granting of amnesty is not a proper function of the judiciary. It is within our power to limit any of our opinions to prospective application. However, such limitation is the exception rather than the rule, and is usually reserved for decisions which overrule legal precedent, *125 in order to avert injustice or hardship caused by the parties' justifiable reliance on prior law. Alvis v. Ribar (1981), 85 Ill.2d 1; cf. Skinner v. Reed-Prentice Division Package Machinery Co. (1977), 70 Ill.2d 1; Molitor v. Kaneland Community Unit District No. 301 (1959), 18 Ill.2d 11 (overruling cases limited to prospective application because of hardship which would be caused to parties who relied on prior law).
In contrast to Skinner, Alvis, and Molitor, this case overrules nothing. Rather, it reaffirms the law governing fiduciary relationships which has been frequently announced by this court (106 Ill.2d at 119). The only rule on which banks could justifiably have relied is that they could not deal with property of their wards for their own benefit, and if they did, they would be liable in damages. Instead, the bank in this case violated the rule. Prospective application means that other banks that also violated the rule will not be held accountable for their breaches of duty. Because I cannot agree that under Illinois law this court should grant a pardon for their transgressions to any banks that have engaged in this type of conduct, I am compelled to dissent from that portion of the holding limiting our decision to prospective application only.
JUSTICE RYAN, dissenting:
I do not agree that a bank, acting as guardian, is prohibited from investing the funds of the ward in its own savings account or certificate of deposit.
The majority opinion discusses the duty of loyalty owed by a fiduciary to a beneficiary and cites our recent decision in Home Federal Savings & Loan Association v. Zarkin (1982), 89 Ill.2d 232. However, the fact that a fiduciary deals with the property of a beneficiary to its own benefit does not render such transaction void. In Zarkin, we noted that if the beneficiary gives his knowing *126 consent to such a transaction and there is no overreaching, it will not be set aside. (Home Federal Savings & Loan Association v. Zarkin (1982), 89 Ill.2d 232, 246; see also Bank of Illinois in Mt. Vernon v. Bank of Illinois in Mt. Vernon (1973), 13 Ill. App.3d 711, 713.) In Bold v. Mid-City Trust & Savings Bank (1935), 279 Ill. App. 365, 374, the court held that such transactions are voidable at the instance of the beneficiary within a reasonable time after notice. Thus in this case we are dealing with voidable and not void transactions.
I pass next to the authority of a guardian to make investments. Although guardians, executors and administrators all serve in fiduciary capacities and perform similar functions with regard to the personal property of their respective estates, they do not enjoy the same status. A guardian is not vested with title to the personal estate of the ward. He is merely charged with its care and management. (2A Horner, Probate Practice and Estates sec. 1081, at 2 (4th ed. rev. 1983).) By contrast, an executor or administrator is vested with the legal title to the personal estate of the decedent and holds title as trustee for the payment of debts. 1A Horner, Probate Practice and Estates sec. 506, at 220 (4th ed rev. 1977).
This difference is reflected in the investment authority of these two classes of fiduciaries. In the absence of statutory or testamentary authority, a representative of a decedent's estate has no authority to invest the personal estate of the decedent. (6 W. James, Illinois Probate Law & Practice sec. 1214, at 364 (1952); 1A Horner, Probate Practice and Estates sec. 516, at 237 (4th ed. rev. 1977).) The provisions of the Probate Act of 1975 also do not mandate that the decedent's personal estate be invested. It provides, instead, that the representative of the estate "in his discretion, may invest money of the estate of a decedent * * *." Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-1.
*127 As to the guardian, however, the Probate Act of 1975 specifically provides that "[i]t is the duty of the representative [of the ward's estate] to invest the ward's money," and the statute makes the guardian chargeable with interest on any money which he wrongfully or negligently allows to remain in his hands uninvested. Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2(a).
Different procedures are also provided for the making of investments by the two classes of fiduciaries. A representative of a decedent's estate need not secure the authority of the court before investing in the investments listed in sections 21-1.01 through 21-1.06 of the Probate Act of 1975. See Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-1.
The representative of the ward's estate, however, without approval of the court may only invest in United States obligations and obligations of which both the principal and interest are guaranteed unconditionally by the United States. (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2(b).) The statute also authorizes the guardian to hold any investments received by him that may not be authorized under the Act "[u]pon receiving the approval of the court," and the court has the power to direct the guardian in connection with these investments. (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2(c).) As to all other investments made by the guardian, the statute requires that a petition to make such investments be filed with the court and that the court authorize the guardian to invest only in the types of property specified in sections 21-2.01 through 21-2.14. Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2(d).
Savings and time deposit certificates of a State bank or a national bank doing business in this State are listed as types of investments specifically provided by the Act in which a guardian may invest if authorized by the court. (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2.06.) *128 These are the types of investments involved in this case.
The majority opinion notes that section 21-2.06, while authorizing investments in savings accounts and certificates of deposit in State and national banks, does not expressly authorize a guardian bank to invest in itself. The opinion notes that section 21-1.03 authorizes a representative of a decedent's estate to invest in savings accounts and certificates of deposit of State and national banks "even though the bank of deposit is the representative of the estate."
I do not consider that the failure of the legislature to provide that a guardian may make such investments "even though the bank of deposit is the guardian" indicates any legislative intent that a guardian bank may not invest in its own savings accounts or certificates of deposit. There is a valid reason for making a specific provision as to representatives of decedents' estates and not as to guardians. It must be remembered that the representative of a decedent's estate is authorized to make these investments without court authority, and is vested with title to the property which he invests at his own discretion as authorized by statute.
A guardian, however, is only a manager of the property. The court having jurisdiction of the guardianship is said to be the superior guardian. The ward's property is within the control of the court, and the guardian is but an agent of the court in the management of this property. (See 39 Am.Jur.2d Guardian and Ward secs. 1, 51 (1968).) Thus it is only investments in the United States obligations, as provided by statute, that the guardian has the authority to control. As to the other types of investments, even though they be authorized by statute, the court has the authority either to authorize or refuse to authorize the guardian placing the ward's property in these investments. There is no need for a specific authorization to be given by the statute to a bank guardian *129 to invest in its own investments. As long as the type of investment falls within the classes specified in the statute, the court has the authority to allow or to deny the petition of the guardian to make such investments. The court's decision is based on the best interest of the ward.
There is nothing in the statute relating to investments by a guardian that prohibits the type of investments in question in this case. In fact, as noted above, the statute specifically authorizes a guardian to invest in savings and time deposit certificates of a State or national bank doing business in the State when authorized by the court. (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2.06.) Citing Belfield v. Coop (1956), 8 Ill.2d 293, 307, the majority opinion states that our function is not to read into a statute exceptions, limitations or conditions which depart from the plain meaning of the statute. However, that is exactly what the majority opinion has done in this case. The plain language of the statute is that a guardian may, when authorized by the court, invest in the type of investments that were made. The majority opinion has written into this statute the limitation that such investments cannot be made if the guardian bank invests in its own investments. The statute only limits the investments by guardians with court authority to the types of property set out in the statute. The statute provides "the court may authorize him additionally to invest in only the types of property, specified in Sections 21-2.01 through 21-2.14". (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 21-2(d).) The statute places no limitation on the ownership of the property in which the ward's money is invested. It is only the majority opinion of this court that writes into the statute such a limitation.
An executor occupies a position of trust in the same manner as a guardian. If the legislature saw no evil in *130 an unsupervised bank executor purchasing its own investments, why should this court find some sinister design when a guardian, supervised by and with the authority of the court, makes a similar investment? It would appear that there would be less likelihood of abuse by a guardian who is under the supervision of the court when making investments than there would be by an unsupervised executor. Furthermore, it is not at all unusual for a bank to act as the guardian of an estate and, upon the death of the ward and the closing of the guardianship, for the same bank to act as representative of the decedent's estate involving the same assets as were in the ward's estate. Under the holding of this court, the bank guardian, even with authority of the court, could not invest in its own savings and time deposits. However, when appointed executor of the same funds it can do so even without court authorization.
I noted at the outset that the transactions in which the fiduciary deals with the property of the beneficiary for its own benefit are voidable and not void. I consider the granting to the guardian by the court of authority to make such investments tantamount to a known consent given by a competent beneficiary. We held in Zarkin that such transactions will not be set aside.
This court has held that the State stands in the position of parens patriae and has the responsibility to care for infants and to protect them from abuse and fraud. This function has historically been exercised by courts of chancery and is of ancient origin. (People ex rel. Wallace v. Labrenz (1952), 411 Ill. 618, 623-24.) In Hayes v. Massachusetts Mutual Life Insurance Co. (1888), 125 Ill. 626, this court discussed the statutory requirement that the court approve a guardian's compromise of a claim or demand of his ward. The court stated:
"For the personal discretion of the guardian there was substituted the judicial determination of an established *131 court. And this statutory requirement is something more than a mere regulation and direction, and was intended by the legislature as an additional safeguard and protection to the ward, by requiring the terms and conditions of any proposed compromise to be submitted to, inquired into and passed upon by that court * * *." (Emphasis added.) 125 Ill. 626, 635-36.)
This court has held that the requirement of court approval is mandatory. In order to "legalize the act of the guardian and render it binding upon the ward, the approval of the court was required * * *." (Emphasis added.) (Hayes v. Massachusetts Mutual Life Insurance Co. (1888), 125 Ill. 626, 636; see also McIntyre v. People ex rel. Wilkey (1882), 103 Ill. 142, 147.) Thus it would appear that approval by the court renders the act of the guardian binding upon the ward.
The legislature has inserted the requirement of court approval of guardian investments as an additional protection to the ward's estate beyond that afforded by the common law. In view of this safeguard and the language of the court in Hayes that such approval is necessary to render the act of the guardian binding on the ward I can see no reason to fashion in this case a per se rule prohibiting such investments as are here being considered.
It is true that in this case the bank, before investing the ward's funds, did not petition the court for authority to do so as required by statute. In failing to do so, the bank acted at its own risk. (McIntyre v. People ex rel. Wilkey (1882), 103 Ill. 142, 147.) However, an approval by the court subsequent to the investment by way of the approval of an account satisfies the statutory requirement of court approval. 2A Horner Probate Practice & Estates sec. 1109, at 30-31 (4th ed. rev. 1983).
In this case, although there was no prior authorization of the investments, there was court approval following *132 a hearing on the final account of the guardian bank. This was not a routine, noncontested approval of an account. It was a contested hearing on objections which had been filed to the final account of the bank. The questions were fully litigated and the objections were overruled. Thus the investments now in question have received court approval as required by statute. The majority opinion states that the court did not have the authority to approve the bank's action because the Probate Act of 1975 does not specifically allow a bank, acting as a guardian, to invest in its own savings accounts and certificates of deposit. I need not lengthen this dissent by contesting the holding of the majority that the court cannot approve unauthorized investments. As I have noted earlier, the types of investments here in question are specifically authorized by the Act. My dissent is based on that conclusion as developed above.
I do wish to point out, however, that the line of cases that support the broad statement made by the majority that the court has no authority to approve such investments were cases that dealt with courts of limited jurisdiction under the 1870 Constitution prior to its amendment in 1964. The majority opinion cites Nonnast v. Northern Trust Co. (1940), 374 Ill. 248, where the court held that the probate court of Cook County could not approve or ratify an unauthorized act of the guardian. Nonnast cited Chapman v. American Surety Co. (1914), 261 Ill. 594, as authority for that holding. However, Chapman carefully distinguishes between the limited authority of county and probate courts and the authority of courts of general jurisdiction sitting as courts of equity. In Chapman, a guardian of minors filed a petition in the probate court for leave to purchase land with the minors' funds. The petition was granted and the land was purchased. Later, a petition was filed in the probate court to require the guardian to account and to restore *133 the money of the minors that had been invested in real estate. The court of review held that the probate court had no authority, under the statute, to approve of the purchase of real estate since it was not an investment authorized by law. An action was filed in the circuit court seeking to enjoin the sale of the land and to retain it for the benefit of the minors. The circuit court granted the relief prayed. On review, this court stated that probate courts take all of their power from the statutes regulating them. Since there was no statutory authority to invest the ward's personal estate in realty, the probate court could not authorize such an investment. This was the statement relied upon by the court in Nonnast.
However, in Chapman the court went on to hold that courts of equity have paramount and plenary jurisdiction over the persons and estate of infants and in exercising that jurisdiction courts of equity may cause to be done whatever may be necessary to preserve the minors' estates and to protect their interests. This court held that where it is for the benefit of the minor, courts of equity, by virtue of their general jurisdiction over estates of minors, have the power to authorize investments not authorized by statute. (Chapman v. American Surety Co. (1914), 261 Ill. 594, 605.) This court upheld the order of the circuit court which enjoined the sale of the real estate and ratified the investment.
The amendment to the Constitution of 1870, effective January 1, 1964, abolished county and probate courts, and under that amendment and the 1970 Constitution there are no longer any courts of limited jurisdiction in this State. The court that approved the investments now under consideration was a court of general jurisdiction and would have the same jurisdiction as the court of equity which approved and upheld an investment not authorized by statute in Chapman. Therefore, the current validity of the statement in Nonnast v. Northern Trust *134 Co. (1940), 374 Ill. 248, 259, relied upon by the majority opinion in this case would seem to be questionable. If there is now a limitation on the court's power to approve investments not listed in the statute, that limitation must be found some place other than in the language of Nonnast.
There is language in the majority opinion which implies an overreaching on the part of the guardian bank. In the concurring opinion there is definite language to that effect, in addition to some emotional language which is certainly not relevant to this case.
The concurring opinion filed in this case makes references to "large financial institutions" benefiting "at the expense of the weak." (106 Ill.2d at 124.) We also find in the concurring opinion this statement: "This potential conflict ripened into an actual breach of duty when the bank bypassed attractive investments outside the bank and deposited the ward's funds in low paying accounts in the bank." (106 Ill.2d at 124.) These statements are just not appropriate to this case. The dissenting opinion in the appellate court notes that the funds of the minor were at all times invested in accounts paying interest at the market rate, which led to the same result as if the bank had deposited the minor's funds in similar accounts in another banking institution. The trust officer of the bank testified that there was uncertainty as to when the guardianship would be taken from the bank because he had been informed that the minor's relatives wished to change guardians. He also stated he did not know in what type of investments the successor guardian would want the money invested. Because of this uncertainty he stated that a substantial amount of the minor's funds were left in savings accounts, which was a liquid position that would facilitate distribution to the successor guardian. (In re Estate of Swiecicki (1984), 121 Ill. App.3d 705, 714-15.) The majority opinion of the appellate court *135 stated "it is not claimed, and there is no evidence to suggest, that the Bank acted with anything less than good faith in carrying out its responsibilities as guardian." (In re Estate of Swiecicki (1984), 121 Ill. App.3d 705, 708.) For these reasons I view the above-referred-to language of the concurring opinion inappropriate.
For the above reasons I dissent.