L.F.H., a Minor, Minor-Respondent-Appellant, v. THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee (Peggy Hammond, Respondent-Appellee).

First District (3rd Division)    No. 1—91—2641

Opinion filed December 22, 1993.

Patrick T. Murphy, Public Guardian, of Chicago (Kathleen G. Kennedy and David Feeley, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Susan S. Wigoda, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

The Cook County public guardian, on behalf of Lisa H., a minor, appeals an order entered by the juvenile court which provides that Lisa remain in placement referred or recommended by the Illinois Department of Children and Family Services (DCFS).

On appeal the public guardian contends that the juvenile court (1) abused its discretion in failing to consider whether the order was in the best interests of the minor; (2) failed to insure that the court-appointed guardian, DCFS, did not violate its statutory and fiduciary responsibility to Lisa as a ward of the court; and (3) did not validly exercise its authority because the order bore the implicit threat of possible contempt proceedings in the future if Lisa should defy the order. It is further asserted that the order is void because it is effective for an indeterminate time period.

For the reasons following, we affirm the order of the juvenile court.

First, we will briefly examine the tragic details of Lisa H.'s troubled life. There is no dispute that she is emotionally and psychologically disturbed.

In July 1987, shortly before Lisa's fourteenth birthday, DCFS sought an adjudication of wardship on her behalf by reason of her mother's abuse and neglect. The case first came to the attention of DCFS upon the mother's hospitalization for psychiatric reasons and the mother's failure to make adequate and appropriate plans for Lisa's care in the mother's absence. Thereafter, numerous investigations and evaluations, including psychiatric assessments, were conducted concerning Lisa, her family and especially her mother's condition.

On March 22, 1988, the juvenile court conducted an adjudicatory hearing concerning Lisa and found her to be a dependent child as a result of the mother's mental and physical inability to care for her and that she was abused because she was maintained in an environment that was injurious to her welfare. On April 20, 1988, the juvenile court conducted another hearing and determined that it was in Lisa's best interest to adjudicate her a ward of the court.

Between that April 1988 adjudication and the court hearing on

July 30, 1991, the date of the entry of the order which is the subject matter of this appeal, Lisa had apparently been placed 47 times by DCFS, had not attended school, became involved with street gangs, and been hospitalized in a State psychiatric facility and in the adolescent psychiatric unit at Northwestern Memorial Hospital. During this period Lisa also became pregnant and suffered a miscarriage. Sometime in July 1991 a juvenile arrest warrant was issued for Lisa but she apparently returned to a DCFS shelter voluntarily before service of the warrant.

The July 30, 1991, hearing at issue was initiated by DCFS to request entry of an order to provide that Lisa stay in placement. The parties present at the hearing were an assistant State's Attorney, the regional counsel for DCFS, a DCFS case worker, an assistant public defender on behalf of Lisa's mother, who was not present, a representative of the Cook County public guardian as guardian *ad litem* on behalf of Lisa, and Lisa. The juvenile court had the benefit of the arguments of counsels and no one substantially disputed the facts surrounding Lisa's tragic circumstances.

DCFS urged that Lisa be kept in placement and explained the various facilities that DCFS was exploring to place Lisa, including a foster home through Merryville Aunt Martha Center and a facility in Colorado called Excelsior which would, and in fact did, become available about one month later. When the court asked what to do with Lisa for the intervening one month, the court was reminded that the public guardian had repeatedly throughout the hearing maintained that Lisa had agreed to remain in placement at this point in time.

The public guardian argued that Lisa wished to reside with her mother and thus posited that she be returned to her mother with support services. However, Lisa's representative also acknowledged that the mother did not have appropriate housing for Lisa at that time. The DCFS case worker agreed that Lisa could not stay in the apartment where the mother resided. Counsel for the mother commented that the mother had not made much effort toward Lisa's possible return and took no position on whether or not the order at issue should be entered.

Lisa addressed the court and declared that she would prefer to be with her mother, that her father lived in Elgin but did not want her and that she should be allowed to join her married sister in Mississippi. The court directed the DCFS case worker to investigate the possibility of Lisa living with her sister in Mississippi and to obtain an interstate compact to allow Lisa to be with her sister.

During the hearing, the judge remarked several times that if he

could he would release her from any further supervision or protection from the court system and allow her to go free and "get in all the trouble she wants to." Despite his often-expressed feelings in this regard, the judge repeatedly commented on the court system's duty to protect the minor. In this regard, the judge stated, "isn't it my duty to protect that minor against what she thinks she should do?" and "[t]hat girl is going to get into trouble, and we have a duty to protect her" and "[i]f we are derelict in our duties and don't follow the rules to protect this girl, then we are wrong." The juvenile court then entered the contested order, which provides that Lisa "shall remain in any and all placements referred or recommended by the Illinois Department of Children and Family Services or its assigns until further order of this court."

At oral argument before this appellate panel, counsel acknowledged that Lisa, who is now 19 years old, is currently under an interstate compact and resides in an appropriate facility in Florida. Counsel further informed this court that prior to her placement in Florida, Lisa was placed for about two years in the Colorado facility called Excelsior and during that time she ran away, no contempt proceedings had been instituted upon her leaving, and she returned to DCFS placement voluntarily.

On appeal, the public guardian first asserts that the juvenile court abrogated its responsibilities to protect Lisa when it observed "if it was up to me and the rules provided for it, I would say to her, to this young lady, go out, you're free" and failed to consider Lisa's best interest.

■ The purpose of the Juvenile Court Act of 1987 (Act)

> "is to secure for each minor subject hereto such care and guidance, preferably in his or her own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community." (Ill. Rev. Stat. 1991, ch. 37, par. 801—2(1).)

The best interest of the child, however, is the paramount consideration of all guardianship and child custody cases. *In re Violetta B.* (1991), 210 Ill. App. 3d 521, 533, 568 N.E.2d 1345.

■ The record does not sustain the public guardian's position. The court heard argument of counsel based upon the past psychological and medical evaluations of Lisa and elicited further information on Lisa's background. The parties before the juvenile court had relative agreement as to Lisa's best interests, *i.e.*, to remain in DCFS placement. The public guardian repeatedly emphasized that Lisa had returned to placement voluntarily before the July 1991 hearing and agreed to remain in DCFS placement and, therefore, objected to the

order. Further, the parties discussed the possibility of returning Lisa to her mother, other appropriate placements in the future and when such placements might be available.

The court entered its order after being fully advised in the record of proceedings in this matter, and absent an abuse of discretion, a reviewing court will not disturb such an order entered by the juvenile court (see *In re W.B.* (1991), 213 Ill. App. 3d 274, 571 N.E.2d 1120; *In re S.B.* (1984), 128 Ill. App. 3d 75, 470 N.E.2d 39).

Second, the public guardian asserts that DCFS acted in its own interest rather than in Lisa's best interest in seeking an order that might result in contempt proceedings against her and that the juvenile court failed to insure that DCFS, as a court-appointed guardian, did not violate its statutory and fiduciary responsibility to Lisa as the court's ward.

The State contends that the DCFS-requested order was not hostile and contrary to Lisa's best interest because DCFS was attempting to insure that Lisa would remain in a safe setting. We agree.

■ The statutory duty of a guardian is defined in the Act:
> " 'Guardianship of the person' of a minor means the duty and authority, subject to residual parental rights and responsibilities, to make important decisions in matters having a permanent effect on the life and development of the minor and to be concerned with his or her general welfare." Ill. Rev. Stat. 1991, ch. 37, par. 801—3(8).

We acknowledge, certainly, that a fiduciary relationship exists between a guardian and a ward as a matter of law and that such relationship bears all the indicia of a relationship between a trustee and beneficiary. *In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 117, 477 N.E.2d 488.

■ We find nothing in the record of the present case or in the actions taken by DCFS in this matter to be inconsistent with the statutory definition of a guardian or the fiduciary relationship between a guardian and a ward. The order offered by DCFS and entered by the juvenile court insured that Lisa would remain in a safe environment.

The public guardian argues that the classic standard set out in *Roodhouse v. Roodhouse* (1890), 132 Ill. 360, 362, 24 N.E. 55, requires this court to set aside the order of the juvenile court because *Roodhouse* held that "a guardian whose interest is hostile to that of his ward, is incompetent to act for his ward in respect to that interest."

*Roodhouse* is clearly distinguishable from the present case. The sole issue in *Roodhouse* was the appropriateness of the guardian's attempt to partition certain lands without having the minor

represented by a guardian *ad litem* where the guardian and his ward were tenants in common of the property. The interest of the guardian was clearly hostile to that of his ward since a proposed division of the land would deprive the ward of his rights in retaining an interest in the property. Due to such clearly hostile interests, the *Roodhouse* court held that the minor should have been made a defendant and had a guardian *ad litem* appointed so that each party, *i.e.*, the guardian and the ward, would be represented by separate counsel.

In the instant case, we do not believe that the order requested by DCFS was hostile or contrary to Lisa's best interests. Moreover, unlike the ward in *Roodhouse*, Lisa was represented before the juvenile court by a vigorous and active guardian *ad litem* who clearly articulated what she believed to be Lisa's rights and what actions might be in her best interests.

Third, we consider whether the order represents an invalid exercise of the court's authority where its enforcement might result in an abused and neglected child being held in contempt of court.

The State argues that courts of our State are vested with inherent power to enforce their orders and in selected cases may enforce those orders by contempt proceedings to preserve the authority and dignity of the judicial branch of government. The State cites *In re Baker* (1978), 71 Ill. 2d 480, 376 N.E.2d 1005, where a 14-year-old girl repeatedly ran away from home and was adjudged to be a "minor otherwise in need of supervision" in accordance with a now-repealed provision of the Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—3 (now Ill. Rev. Stat. 1991, ch. 37, par. 803—3, entitled "minor requiring authoritative intervention")). DCFS then placed the minor in a certain children's facility which she left without authorization. The trial court entered another order specifically stating that further unauthorized absences might result in the minor being held in contempt of court. The minor again left her assigned home. The trial court held her in contempt and the supreme court affirmed the contempt order.

Although the order in the case at bar does not contain language about possible contempt proceedings in the future if Lisa were to leave placement without permission, courts generally may take such action to protect and enforce their orders. The *Baker* court further observed that even legislative alternatives to the use of contempt power in the treatment of juveniles cannot serve as a restriction on the contempt powers of courts and any such effort would be an impermissible violation of separation of powers so firmly established in our constitutional balance. *Baker*, 71 Ill. 2d at 484.

Abused and neglected children are not delinquent children by definition and, accordingly, contempt powers should be used sparingly

and only in the most extreme cases. Apparently, the parties to this case understood that principle because after Lisa abandoned her placement without authority after the entry of the order, no contempt proceedings were begun and she returned to her placement.

Accordingly, the court had the power to enter the order and the parties wisely chose not to seek extreme measures of enforcement.

■ Finally, the public guardian attacks the order because it failed to specify a definite time period.

Previous cases involving minors who had been adjudicated delinquent and were placed on indefinite terms of probation (*In re T.E.* (1981), 85 Ill. 2d 326, 423 N.E.2d 910) or who had been adjudicated a minor otherwise in need of supervision and were placed on indefinite terms of supervision (*In re R.R.* (1982), 92 Ill. 2d 423, 442 N.E.2d 252) held that such dispositional or supervision orders are void if the order fails to specify a definite time period.

These cases, however, dealt with the supervision or probation of children who would otherwise have been in our criminal justice system and who were entitled to receive the same rights as any other accused in that system. The character and nature of the placement order entered by the juvenile court in the instant case is very different since it represents the mere continuation of DCFS placement until the further order of court or, in any event, until Lisa attains her twenty-first birthday (Ill. Rev. Stat. 1989, ch. 37, par. 802—31(1)). The order is subject to change, modification and revocation to meet Lisa's changing needs and allow the court and all interested and concerned parties to be in a position to respond to those needs. Most importantly, as repeatedly emphasized by the public guardian, Lisa was found to be an abused and neglected child, not a delinquent as in the case of *T.E.* or a minor otherwise in need of supervision as in the case of *R.R.*

For all the foregoing reasons, we find that, under the facts of this case, the juvenile court did not abuse its discretion in entering an order providing that Lisa remain in DCFS placement.

Affirmed.

TULLY, P.J., and RIZZI, J., concur.