NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of

the opinion to request a rehearing. Also, opinions are subject to

modification, correction or withdrawal at anytime prior to issuance of the

mandate by the Clerk of the Court. Therefore, because the following slip

opinion is being made available prior to the Court's final action in this

matter, it cannot be considered the final decision of the Court. The official

copy of the following opinion will be published by the Supreme Court's

Reporter of Decisions in the Official Reports advance sheets following final

action by the Court.

                                       

                   Docket No. 79861--Agenda 13--March 1996.

   ROSAIRE M. NOTTAGE, d/b/a Nottage & Ward, Appellant, v. RICHARD F. JEKA,

                                  Appellee.

                                       

                         Opinion filed May 31, 1996.

          JUSTICE MILLER delivered the opinion of the court:

          Plaintiff, Rosaire M. Nottage, an attorney, d/b/a Nottage & Ward,

filed an action in the circuit court of Cook County seeking recovery of

attorney fees from defendant, Richard F. Jeka. The firm of Nottage & Ward had

represented Jeka in post-decree proceedings following the dissolution of

Jeka's marriage, and Nottage brought the instant action to recover

compensation from Jeka for work performed in the course of those proceedings

by Nottage and other attorneys in the firm. Following a bench trial, the

judge found in Nottage's favor. Jeka appealed. The appellate court vacated

the circuit court judgment and dismissed the action, concluding that Nottage

could not maintain the present common law action because section 508 of the

Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508 (West

(1992)) provides the sole recourse for the recovery of attorney fees in

domestic relations matters. 274 Ill. App. 3d 235. We allowed Nottage's

petition for leave to appeal (155 Ill. 2d R. 315(a)).

          The procedural history of this case can be stated briefly. Nottage

filed the present action in the circuit court of Cook County on July 1, 1993.

In her complaint, she alleged that her firm, Nottage & Ward, and Jeka had

entered into a retainer agreement for legal services on April 3, 1989, that

she and her firm had performed their obligations under the contract, and that

Jeka owed a balance of $4,238.72 in attorney fees. Attached to the complaint

were copies of the signed retainer agreement and of the billing documentation

prepared by the Nottage firm. The retainer agreement recited that it was for

representation of Jeka in certain post-decree matters in the circuit court of

Du Page County. It appears that the firm withdrew from representation while

the matter was still pending, and substitute counsel was then obtained. The

record does not disclose the resolution of the Du Page County matter.

          Jeka moved to dismiss the complaint. He first argued that the

action was barred by an identical and pending claim filed by Nottage in the

circuit court of Du Page County, where the post-decree proceedings had

occurred. Jeka separately argued that, because the Du Page County matter

remained pending, the Du Page court alone could exercise jurisdiction over

the petition for fees. Finally, Jeka contended that the action was being

brought in an inconvenient forum and asked that the cause be transferred to

the circuit court of Du Page County under the doctrine of forum non

conveniens.

          The trial judge refused to dismiss the action. In a subsequent

answer to the complaint, Jeka denied that he owed Nottage & Ward anything for

their work and raised, as an affirmative defense, the contention that he had

already paid the Nottage firm a total of $10,514 in fees, an amount that he

believed was full and reasonable compensation for the lawyers' services. Jeka

filed a request for a jury trial together with his answer to the complaint.

          The trial judge, on his own motion, struck Jeka's jury demand.

Following a bench trial, the court ruled in Nottage's favor on the claim and

awarded $4,009.72 in damages, plus costs. No report of proceedings,

bystander's report, or agreed statement of facts is included in the record on

appeal; a written order, however, states that the judge found the rates

charged by the Nottage firm to be reasonable and the bulk of the hours billed

to the client to be properly established. The difference between the amount

sought by Nottage and the amount awarded by the trial judge apparently

reflects the judge's disallowance of compensation for hours not properly

established by the attorney.

          Jeka appealed, and the appellate court vacated the circuit court

judgment and dismissed Nottage's action. The court concluded that section 508

of the Illinois Marriage and Dissolution of Marriage Act was designed by the

legislature to provide the sole means by which an attorney may recover a fee

from a client for representation in a proceeding under the Act, and that any

request for fees must therefore be maintained with the underlying domestic

relations matter. Because the present action was not being prosecuted under

section 508, the appellate court ruled that it must be dismissed.

          In support of this holding, the appellate court pointed to a number

of considerations that, it believed, demonstrated the legislature's intent to

make section 508 an attorney's exclusive mode of recovery of fees in domestic

relations matters. The appellate court observed that section 508, unlike a

common law contract action, permits the allocation of attorney fees between

spouses, so that responsibility for fees can be shifted from the less

affluent spouse to the more affluent spouse. Additionally, the court believed

that determining fees under the statute would enable the judge to consider

the financial resources of the client in setting an appropriate award. The

appellate court also noted that a petition for fees, if brought as part of

the domestic relations case from which it arose, could be decided by the same

judge who had heard the underlying matter and who would therefore already be

familiar with the case. Conversely, the appellate court asserted that

allowing the fee petition to go forward as a separate proceeding might place

the case before a judge who did not customarily handle domestic relations

cases and thus "may not have a daily familiarity with domestic relations

cases and the changing nuances and charges involved in billing for legal

services under the Act." 274 Ill. App. 3d at 239. Finally, the appellate

court believed that disposing of a fee claim with the underlying domestic

relations case would promote judicial economy and would resolve with finality

the various issues in the domestic relations matter. The court noted that the

statute of limitations for actions on written contracts, including retainer

agreements, is 10 years (735 ILCS 5/13--206 (West 1992)), a period the court

deemed excessive in domestic relations cases.

          Nottage filed a petition for rehearing, which was denied by the

appellate court in an unpublished order, with one justice dissenting. We

allowed Nottage's petition for leave to appeal. 155 Ill. 2d R. 315(a). The

Illinois State Bar Association and the Du Page County Bar Association were

granted leave to submit briefs as amici curiae in behalf of Nottage. 155 Ill.

2d R. 345.

          Section 508(a) of the Illinois Marriage and Dissolution of Marriage

Act (750 ILCS 5/508(a) (West 1992)) provides:

                    "The court from time to time, after due notice and

               hearing, and after considering the financial resources of the

               parties, may order any party to pay a reasonable amount for

               his own costs and attorney's fees and for the costs and

               attorney's fees necessarily incurred or, for the purpose of

               enabling a party lacking sufficient financial resources to

               obtain or retain legal representation, expected to be incurred

               by any party, which award shall be made in connection with the

               following[.]"

Subsection (a) proceeds to list the services for which an award of attorney

fees may be obtained under the Act. Section 508(b) authorizes the recovery of

costs and legal fees from a party who, without cause or justification,

refuses to comply with an order or judgment. Finally, section 508(c)

authorizes the court to order that an award of fees be paid directly to the

attorney or to the relevant party.

          The question before us is one of statutory interpretation. The

fundamental canon of construction is to ascertain and give effect to the

intention of the legislature. Varelis v. Northwestern Memorial Hospital, 167

Ill. 2d 449, 454 (1995). Courts will look first to the words of the statute

(Metropolitan Life Insurance Co. v. Washburn, 112 Ill. 2d 486, 492 (1986)),

for the language used by the legislature is the best indication of

legislative intent (Kirwan v. Welch, 133 Ill. 2d 163, 165 (1989); County of

Du Page v. Graham, Anderson, Probst & White, Inc., 109 Ill. 2d 143, 151

(1985)). When the statutory language is clear, no resort is necessary to

other tools of interpretation. Henry v. St. John's Hospital, 138 Ill. 2d 533,

541 (1990). Moreover, courts should not, under the guise of statutory

construction, add requirements or impose limitations that are inconsistent

with the plain meaning of the enactment. People ex rel. LeGout v. Decker, 146

Ill. 2d 389, 394 (1992); In re Estate of Swiecicki, 106 Ill. 2d 111, 120

(1985).

          We believe the appellate court erred when it concluded that section

508 of the Marriage and Dissolution of Marriage Act is the sole means by

which an attorney may recover a fee from a client in a domestic relations

matter, to the exclusion of a common law action for contract damages, such as

that brought in this case. A consideration of the statutory language, as well

as of the practical difficulties that would result from the appellate court's

holding, persuades us that the legislature did not intend that result.

          We find nothing in the plain language of the statute to indicate

that the legislature intended that the remedy provided by section 508(a)

would be an attorney's sole avenue of recourse against a client, precluding

any subsequent remedy brought after the termination of the underlying case.

As this court stated in Kosicki v. S.A. Healy Co., 380 Ill. 298, 302 (1942),

"Where *** a new remedy is given by statute, and there are no negative words

or other provisions rendering it exclusive, it will be deemed to be

cumulative only and not to take away prior remedies." In its operation,

section 508(a) supplements whatever other remedies an attorney might have in

obtaining fees from a client. Nothing in the statutory language suggests that

the legislature also intended to eliminate common law actions for fees, like

the one at issue here.

          The statute employs the term "may" in authorizing the trial court

to award fees to an attorney: "The court *** may order any party to pay a

reasonable amount for his own costs or attorney's fees ***." "May" is

normally construed in a permissive rather than a mandatory fashion (People v.

Ullrich, 135 Ill. 2d 477, 484 (1990)), though its precise meaning can depend

upon the meaning of the statute as a whole (Castaneda v. Illinois Human

Rights Comm'n, 132 Ill. 2d 304, 325 (1989)). Nottage argues that "may" is

being used in a permissive sense in section 508(a), demonstrating that the

provision is not an attorney's exclusive remedy.

          Jeka suggests that the term here simply means that the court might

or might not enter an award for fees, depending on the facts and

circumstances of the case. Jeka maintains that an attorney must either pursue

his claim for fees under section 508 or permanently forgo it, and that the

use of the term "may" does not by itself demonstrate that the legislature

understood the provision to be optional. Even if Jeka is right and the term

"may" is, at best, inconclusive regarding the legislature's intent, still he

is unable to point to any language in the statute in support of his

contention that the legislature intended that section 508(a) would serve as

the exclusive means by which an attorney may recover a fee from a client for

representation in a domestic relations dispute.

          Jeka correctly observes that the provision in section 508(a)

authorizing an attorney to recover fees from the attorney's own client was

designed to promote judicial economy by allowing the request for fees to be

maintained in the underlying domestic relations matter. In re Marriage of

Pagano, 154 Ill. 2d 174, 183 (1992). Unlike the statutory scheme that

preceded it, the Illinois Marriage and Dissolution of Marriage Act, through

section 508, expressly enables an attorney to seek a fee from the attorney's

own client in the underlying action. Ill. Ann. Stat., ch. 40, par. 508,

Historical & Practice Notes, at 637 (Smith-Hurd 1980). Section 15 of the

former divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 16) permitted one

spouse to obtain from the other an award for fees to prosecute or defend the

action. Under the former law it had been held, however, that an attorney

could not file a claim for a fee against the attorney's own client because

the divorce court lacked jurisdiction to resolve a claim of that nature. In

re Petition of Neiman, 8 Ill. App. 3d 454 (1972); Pressney v. Pressney, 339

Ill. App. 371 (1950). This result was later questioned, following the

adoption of the 1970 Constitution (Seniuta v. Seniuta, 49 Ill. App. 3d 329,

331 (1977) ("Under the Illinois Constitution of 1970, all differences between

law and equity were abolished and a circuit judge may hear any justiciable

matter")), and section 508(a) expressly permits an attorney to present his

claim in the same proceeding.

          In this respect, section 508 differs from the corresponding

provision of the Uniform Marriage and Divorce Act, after which section 508

was patterned; section 313 of the Uniform Act is purely a fee-shifting

provision, authorizing only petitions by one party to obtain fees from the

other party. Uniform Marriage and Divorce Act §313, 9A U.L.A. 450 (1987);

Ill. Ann. Stat., ch. 40, par. 508, Historical & Practice Notes, at 637

(Smith-Hurd 1980) ("Subsection (a) is intended to promote judicial economy by

obviating the need for an attorney to sue his own client for attorney's fees

in a separate suit. Section 313 of the Uniform Act does not contain this

express authority for the court to order a party to pay his own attorney's

fees and costs"). As we view it, however, the principal purpose of section

508(a) is to enable a court to shift liability for attorney fees from one

party to another; secondarily, the statute permits an attorney to submit a

claim for fees against a client.

          The appellate court has previously held that a petition for fees

initiated by an attorney against a client during the pendency of a related

domestic relations matter must be brought in the underlying case and

prosecuted as part of the same action. Gitlin v. Hartmann, 175 Ill. App. 3d

805 (1988); In re Marriage of Baltzer, 150 Ill. App. 3d 890 (1986). Without

addressing the merits of those decisions, we do not believe that the same

concerns of judicial economy that prompted the development of the rule

expressed in Gitlin and Baltzer must also bar an independent action brought

after the conclusion of the underlying case, as the appellate court

determined here. See Myers v. Brantley, 204 Ill. App. 3d 832, 835 (1990).

          Indeed, we believe that the legislature would have clearly stated

its intent if it had proposed to bar independent actions for fees in those

circumstances, and we decline to imply a legislative intent where none is

expressed. The practical difficulties of the appellate court's approach and

the potential conflicts between an attorney and client under such a regime

are many. See In re Marriage of Pitulla, 141 Ill. App. 3d 956, 961 (1986). To

take but one example: An attorney representing a client who agrees to pay a

fee in installments or whose ability to pay a fee is doubtful would be faced

with the quandary of simply continuing the representation without submitting

a claim for fees, with the attendant risk of later being barred from bringing

an action against the client to recover the unpaid portion of the fee, of

prolonging the course of the underlying proceeding until the fee had been

entirely paid, or of submitting a claim in the underlying proceeding at the

risk of delaying the client's appeal from the underlying judgment. Requiring

an attorney to choose among the preceding alternatives would not be conducive

to vigorous representation. As the appellate court noted in In re Marriage of

Burton, 203 Ill. App. 3d 890, 893 (1990), in distinguishing Gitlin's

requirement that a fee request be joined with the pending, underlying

proceeding from which it arose, "We do not believe that Gitlin should be read

as enacting an outright bar to the pursuit of attorney fees in any forum

other than a dissolution action. To read it so could cause it to become a

sword aimed straight at the heart of attorney-client relationships."

          In support of its holding, the appellate court likened the

treatment of fees under the Marriage and Dissolution of Marriage Act to

claims for sanctions in civil actions, which must be brought as part of the

underlying action. Marsh v. Evangelical Covenant Church, 138 Ill. 2d 458,

467-68 (1990); 134 Ill. 2d R. 137. The appellate court reasoned that requests

for fees, whether directed at the opposing party or at the attorney's own

client, must similarly be brought as part of the related case. 274 Ill. App.

3d at 243-44. We do not agree. A request for sanctions is readily

distinguishable from an attorney's claim for fees against his or her own

client. In some instances, an attorney's claim for fees will not arise until

much later, after the case has concluded, when the client declines to make

further payments toward satisfaction of an outstanding fee. Conduct giving

rise to a request for sanctions, in contrast, is already known at the time of

the underlying litigation.

          The appellate court's stated concern that failure to calculate fees

under the guidelines of section 508 would ignore certain vital criteria (274

Ill. App. 3d at 239-40) is also misplaced. A claim for fees, whether made

under section 508 or in a separate common law action, as here, must satisfy

certain professional standards. Rule 1.5 of the Illinois Rules of

Professional Conduct requires that a fee for legal services be reasonable,

and the rule specifies standards relevant to that determination. 134 Ill. 2d

R. 1.5. Under the analysis proposed by the appellate court, a judge setting

a reasonable fee under section 508(a) would be allowed to take into account

the financial resources of the client. We question the relevance of that

consideration, however, when the fee is being sought from the attorney's own

client. As the appellate court noted in In re Marriage of Ransom, 102 Ill.

App. 3d 38, 41 (1981), in rejecting the contention of a client that the court

in a proceeding under section 508(a) erroneously failed to consider her

resources in determining the fee she owed her attorney, "Regardless of the

respective financial circumstances of the spouses, an attorney is still

entitled to seek payment for his services from his own client, and the

legislature in providing this procedure did not intend that it be conditioned

upon the financial abilities of the parties." We believe that a consideration

of financial resources is peculiarly suited to cases in which one party seeks

contribution for attorney fees from the opposing party, rather than when the

fee is imposed against the attorney's own client.

          The appellate court also mentioned, in support of its holding, that

disposition of the fee issue as part of the underlying proceedings would

resolve with finality the questions in the case, and would place the issue

before a judge who is already acquainted with the litigation at hand and who

is familiar with domestic relations matters. These concerns may have some

merit in some circumstances, but they do not overcome the complete absence of

any language in section 508(a) indicating that the legislature intended for

the provision to provide the exclusive remedy of an attorney in a fee action

against a client. In addition, we believe that the appellate court overstates

the supposed benefits of its approach. We have every confidence that judges

who do not normally handle domestic relations matters are fully capable of

resolving fee disputes involving representation in those cases. Moreover,

there is no guarantee, particularly in a high-volume court, that a fee

petition will be heard by the same judge who ruled on the principal issues in

the underlying case.

          In sum, we find nothing in the plain language of section 508(a) to

suggest that the legislature intended that the statute would provide the

exclusive means by which an attorney representing a party in a domestic

relations case may recover a fee from a client. As we have noted, a number of

practical considerations counsel against such an interpretation.

          Jeka also briefly argues that Nottage's prior filing of a fee

petition in Du Page County was an additional bar to the separate Cook County

fee action and, further, that the trial court improperly struck his jury

demand. Our consideration of these issues is handicapped, however, by the

absence of a report of proceedings, agreed statement of facts, or bystander's

report from the circuit court. In addition, documentation that would support

these arguments is not found in the common law record. Jeka, as appellant

from the circuit court judgment, had the obligation to make a record that

would support his claims of error, and he has not. Foutch v. O'Bryant, 99

Ill. 2d 389 (1984).

          For the reasons stated, the judgment of the appellate court is

reversed, and the judgment of the circuit court of Cook County is affirmed.

Appellate court judgment reversed;

                                                circuit court judgment affirmed.